**EMPLOYERS INSURANCE
OF WAUSAU, Plaintiff,**

v.

**BODI–WACHS AVIATION INSURANCE
AGENCY, INC., et al., Defendants.**

No. 93 C 2132.

United States District Court,
N.D. Illinois, E.D.

March 9, 1994.

Robert Marc Chemers and Donald J. Kindwald of Pretzel & Stouffer, Chartered, Chicago, IL, for plaintiff.

Cary S. Fleischer, Alan R. Dolinko of Chuhak & Tecson, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Employers Insurance of Wausau ("Employers," treated as a singular noun) sues Bodi & Wachs Aviation Insurance Agency, Inc. ("Bodi & Wachs," also employed as a singular collective noun) and Robert and Bernadine West (collectively "Wests") under the Declaratory Judgment Act, 28 U.S.C. § 2201.[1] Employers seeks a ruling that it has no obligation under its errors and omissions ("E & O") Policy AGW 000798 (the "Policy") to defend Bodi & Wachs in an action brought by Wests against Bodi & Wachs and others in the Circuit Court of Winnebago County, Illinois (*West, et al. v. Eagle Air Helicopters, et al.*, No. 92–MR–23) (the "Action")).

Employers and Bodi & Wachs have filed cross-motions under Fed.R.Civ.P. ("Rule") 56 for summary judgment as to Employers' duty to defend, with Bodi & Wachs' cross-motion also seeking a declaration that Employers has a duty to indemnify it against any liability arising out of the Action.[2] For the reasons stated in this memorandum opin-

---

1. Amended Complaint ("Complaint") ¶¶ 18 and 24 say that Wests are listed only as "nominal party defendants for the sole purpose of being bound by the judgment rendered in this cause."

2. On September 14, 1993 Bodi & Wachs had also sought to assert a counterclaim against Employers coupled with a cross-complaint against General Insurance Company of America ("General"), with whom Bodi & Wachs had a professional E & O policy in effect from August 4, 1991 to August 4, 1992. This Court denied that motion orally a week later.

ion and order, Bodi & Wachs' motion is granted, so that Employers' motion is naturally denied.[3]

### Summary Judgment Principles

■ Rule 56 principles impose on each movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Where as here cross-motions are involved, that principle thus demands a dual perspective—one that this Court has often described as Janus-like—that sometimes involves the denial of both motions. That has not occurred here, though, because of the total absence of material factual disputes and of inconsistent inferences from those facts.

■ This District Court's General Rule ("GR") 12(m) and 12(n) respectively require the submission of factual statements in support of and in opposition to Rule 56 motions. Each of Employers and Bodi & Wachs has filed its own GR 12(m) statement (respectively cited "P. 12(m) ¶ —" and "D. 12(m) ¶ —"), but only Employers has filed a GR 12(n)(1) statement (cited "P. 12(n) ¶ —"). In technical terms, then, on the Bodi & Wachs motion only the facts set forth in its GR 12(m) statement as to which there is no genuine issue are taken as established, while as to Employers' motion all the material facts stated in its GR 12(m) statement that are supported by the factual record and are not at odds with Bodi & Wachs' initial GR 12(m) statement are deemed admitted (*Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993)).

As it turns out, however, there are really no material facts in dispute, so that technical difference proves to have no practical significance. And because the outcome here depends upon:

1. Wests' Circuit Court Complaint (cited "Action Complaint ¶ —"),

2. a letter sent by Wests' counsel to Bodi & Wachs' counsel,

3. correspondence between Bodi & Wachs' counsel and Employers and

4. the precise coverage to which Bodi & Wachs is entitled under the Policy,

this opinion looks to those documents (all of which are exhibits attached to the parties' submissions) to assess the accuracy of the GR 12(m) statements (see, e.g., *Hermitage Ins. Co. v. Dahms*, 842 F.Supp. 319, 321 (N.D.Ill.)).

### Facts[4]

Bodi & Wachs is an aviation insurance broker placing insurance policies exclusively for the aviation industry (Jay Bodi ("Bodi") Dep. 11–12). On February 14, 1992 Wests filed the Action Complaint (which was captioned "Complaint for Declaratory Relief" and asked for a declaration of rights as its only expressly identified type of relief), listing "Bodi & Wachs Aviation Insurance" as one of the named defendants (P.Ex. B at 30). In late February or early March 1992 Bodi & Wachs was served with a copy of the Action Complaint (D. 12(m) ¶ 7). Because the Action Complaint's allegations are obviously important in determining Employers' duty or lack of duty to defend the Action on behalf of Bodi & Wachs, relevant paragraphs of the Complaint are reproduced at length here (italics in original omitted):

5. At all relevant times, TransAmerica Insurance Company ["Transamerica"], was an insurance corporation authorized to do

---

**3.** Employers has asserted nothing in response to the Bodi & Wachs motion other than a restatement of the arguments that Employers had advanced in support of its own motion. That being so, the case does not pose any question that might potentially stem from the principle of Illinois law that an insurer's obligation to defend its insured is separate from and broader than its contractual obligation to indemnify (*Conway v.*

*Country Casualty Ins. Co.*, 92 Ill.2d 388, 394, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982)). Instead the current motions prove fully dispositive of the entire action.

**4.** Where the P. 12(n) statement either explicitly or implicitly admits an assertion in the D. 12(m) statement, only the latter will be cited.

business in the State of Illinois and was doing business in Winnebago County, Illinois.

6. At all relevant times, Southern Marine & Aviation Underwriters, Inc. ["Underwriters"] was a corporation authorized to do business in the State of Illinois and was the Aviation Manager and Authorized Representative of TransAmerica Insurance Company.

7. At all relevant times, John A. Giandi was the Aviation Manager and Authorized Representative for TransAmerica Insurance Company.

8. At all relevant times, Bodi & Wachs Aviation Insurance, was an insurance broker and acted as agent and producer of insurance business for Southern Marine & Aviation Underwriters, Inc.

9. All Defendants named herein have an interest in this controversy, or in the transaction or series of transactions out of which this controversy arose, and are necessary parties for the complete determination of the questions involved.

10. Prior to, and on March 22, 1989, Eagle Air Helicopters, Inc. ["Eagle Air"] had a contract with Commonwealth Edison for helicopter services that included the following requirement:

"M. The Contractor must carry liability insurance with a company duly licensed to do business in Illinois, acceptable to Owner, in the following minimum amounts on each helicopter furnished, and such insurance will include the Owner as an additional insured:

Comprehensive Bodily Injury and Property Damage Liability Including Passenger Liability ......... $5,000,-000.00

Voluntary passenger Liability on Owner's Employes (sic), each such Passenger ............... $50,000.00

A certified copy of the insurance policy must be furnished to the Owner."

11. At all times prior to March 22, 1989, Eagle Air Helicopters, Inc. complied with the contract requirements of Commonwealth Edison Company by purchasing and maintaining a $5,000,000.00 single limit liability insurance for bodily injury and property damage claims for TransAmerica Insurance Company, naming Commonwealth Edison Company was an additional insured on the policies.

12. All Defendants had knowledge of the contractual requirement of Commonwealth Edison for Eagle Air Helicopters, Inc. to purchase and maintain policies containing a $5,000,000.00 single limit liability insurance for bodily injury and property damage claims, naming Commonwealth Edison Company as an additional insured on the policies.

13. On March 1, 1988, TransAmerica Insurance Company, by and through Southern Marine & Aviation Underwriters, Inc. and John A. Giandi, and as a result of the activities of Bodi & Wachs Aviation Insurance brokers, duly issued Policy No. 120 5766 with a $5,000,000 single limit insuring Eagle Air Helicopters, Inc.... and Commonwealth Edison Company with $5,000,000 single limit of liability, including passengers; however, Plaintiffs do not have a copy of this policy.

\* \* \* \* \* \*

15. All Defendants knew that Policy No. 120 5766 would expire on March 1, 1989 and Eagle Air Helicopters, Inc. required a renewal policy to be effective March 1, 1989 with identical coverage.

16. On March 22, 1989, Robert West, an employee of Commonwealth Edison Company in the course and scope of his employment, a passenger in a helicopter owned and operated by Eagle Air Helicopters, Inc.... was injured in a helicopter crash that occurred in De Kalb County, Illinois enroute to Winnebago County, Illinois.

17. After the accident of March 22, 1989, on March 27, 1989, for reasons presently unknown to Plaintiffs, TransAmerica Insurance Company, by and through Southern Marine & Aviation Underwriters, Inc. and John A. Giandi at the request of Bodi & Wachs Aviation Insurance, duly issued Policy No 120–7423 insuring Eagle Air Helicopters, Inc.... and Commonwealth Edison Company with $5,000,000 limit of liability for Property Damage and

$5,000,000 Per Occurrence, with an effective date of March 20, 1989. . . .

18. Contrary to the express contract requirements of Commonwealth Edison Company, and contrary to the limits of the earlier policy, which were all well known to Defendants, the renewal policy contained a new limitation of $100,000 for each passenger.

\*   \*   \*   \*   \*   \*

20. TransAmerica Insurance Company has asserted that it carries only $100,000 per passenger limits and has offered only $100,000 to Plaintiffs.

21. Plaintiffs believe, and therefore assert that TransAmerica Insurance Company, or its agents or representatives, issued a modified insurance policy, with full knowledge of the accident, contrary to the express direction of Eagle Air Helicopters, Inc., contrary to the contractual requirements of Commonwealth Edison Company, and contrary to the earlier policy for Eagle Air Helicopters, Inc.

22. A dispute has arisen concerning the terms and provisions of the insurance policy that was in force on March 22, 1989; to-wit, whether the policy should have been issued with coverage for $5,000,000 single limit bodily injury, including passengers, and, in the alternative whether the term "Bodily Injury" as defined in the policy permits Bernadine West to claim $100,000 for her Bodily Injury loss of consortium claim.

Wherefore, Plaintiffs pray that this Court enter a Declaratory Judgment finding that a justiciable controversy exists and declaring the rights and liabilities of the parties hereto, specifically, that:

A. the policy issued by TransAmerica Insurance Company has coverage for $5,000,000.00 liability insurance for bodily injury and property damages claims of Plaintiffs; and

B. the attempt by Defendants, or their agents, to issue a policy after the accident containing the $100,000 per person limitation was ineffective; or, in the alternative

C. that the term "Bodily Injury" as defined in the policy provides $100,000 coverage for the Bodily Injury claim of Robert West and a separate $100,000 coverage for the Bodily Injury loss of consortium claim of Bernadine West;

D. for such other and further relief as the Court deems fit and proper; and

E. for Plaintiffs' costs.

Apart from the employer-employee relationship between Commonwealth Edison and Robert West (Action Complaint ¶ 16) and the Eagle Air commitment to have provided liability insurance coverage for Commonwealth Edison (*id.* ¶ 10), Bodi & Wachs Mem. 13 fleshes out other relationships between defendants named in the Action Complaint. Eagle Air was a customer of Bodi & Wachs and had requested the latter, through Underwriters, to place with TransAmerica the insurance on the helicopter that crashed with Robert West aboard.

On April 1, 1992 Bodi & Wachs filed a motion to dismiss the Action Complaint on two grounds (D.Ex. 1). One of its arguments was that Wests had no standing to pursue the Action until they had proved liability and had been awarded damages in excess of the $100,000 that TransAmerica was willing to pay (*id.* at 4–6). More important for purposes of this suit, Bodi & Wachs also contended that because it could not be affected by any decree issued in the Action in terms of the relief sought there by Wests, it could not properly be considered a defendant to the Action (*id.* at 3).

In reaction to that second contention, on April 13, 1992 Wests served notice on Bodi & Wachs of their motion to add a "Count II Petition for Discovery" ("Count II") to the Action Complaint under Ill.S.Ct.Rule ("Ill. R.") 224 (D.App. Ex. 2). Both the caption and the test of Ill.R. 224 reflect that it is a vehicle for discovery and does not itself involve an assertion of liability—and the state court judge accordingly kept Bodi & Wachs in the Action and simply ordered it to comply with Wests' outstanding subpoena. On April 15 Wests' counsel sent a letter to Bodi & Wachs' counsel, stating in relevant part (P. 12(m) ¶ 8; P.Ex. B at 65–66):

I wish to alert you that the errors and omissions carrier for Bodi & Wachs is potentially involved. I direct your attention to the following paragraphs of the Complaint:

[quoting Action Complaint ¶¶ 12, 18 and 21]

Paragraph (D) of the Complaint asks: "for such other and further relief as the Court deems fit and proper".

Included in that portion of the prayer for relief is the potential of a negligence claim against Bodi & Wachs.

It is in the best interest of Bodi & Wachs to alert the errors and omissions carrier as to this potential claim so as not to lose coverage.

At that time Employers had not yet issued the Policy (whose effective date was August 4, 1992)—as n. 2 reflects, General was then Bodi & Wachs E & O insurer. In any event, nothing of consequence to the present lawsuit took place in the Action until November 1992 (a few months after issuance of the Policy), when during or after one of the three deposition sessions involving Bodi (who is a one-half owner of Bodi & Wachs, Bodi Dep. 5) Wests' counsel asked whether Bodi & Wachs had any E & O insurance relevant to the Action (D. 12(m) ¶ 11; Bodi Dep. 70–73). After that session Wests' counsel told Bodi and his counsel that it was likely that Wests would file an amended complaint "seeking damages against" Bodi & Wachs (D. 12(m) ¶ 13; Bodi Dep. 85).[5]

As a result of that warning, Bodi & Wachs' counsel reviewed its professional E & O insurance file and found several documents from Employers: a copy of a premium finance agreement, a copy of a confirmation of coverage and a specimen policy (Bodi Def. 85; D. Ex. 4 ("Dolinko Aff.") ¶¶ 2, 4). That led to Bodi & Wachs's counsel's informing Employers that a covered claim might be asserted against Bodi & Wachs (Bodi Dep.

85)—on December 28, 1992 counsel sent a letter to Employers telling it of the Action and stating in part (D. 12(m) ¶ 18; Bodi Dep. 68–69; Amended Complaint Ex. D):

At the present time, Bodi & Wachs Aviation Insurance has been named as a party in this litigation only for purposes of obtaining discovery from Bodi & Wachs Aviation; no claim for monetary relief has been asserted against Bodi & Wachs in this matter.

\*     \*     \*     \*     \*     \*

However, should a claim be asserted against Bodi & Wachs in the future, Bodi & Wachs would tender this claim to you and expect full coverage in accordance with the above identified policy. If you believe this matter should be tendered to the company at the present time, please let us know and we will be happy to comply with any obligations under the policy.

On January 12, 1993 J. Mitchell Dickerson ("Dickerson") of E & O Professional Underwriting Administrators ("Administrators") responded on Employers' behalf by sending a reservation of rights letter, pointing out that issuance of the Policy was subject to the receipt of two documents that Bodi & Wachs had yet to furnish: an "Insolvency Exclusion Endorsement" and a "Potential Claim Exclusion Endorsement" (Dolinko Aff. ¶ 7; D. Ex. 7 at 2). Dickerson also asked that Administrators be sent copies of all matters relevant to the case then possessed by Bodi & Wachs and its counsel. Finally, Dickerson raised the possibility that Bodi & Wachs had violated its obligation under the Policy to give appropriate written notice of potential and actual claims (D. Ex. 7 at 3).

On January 26, 1993 Bodi & Wachs' counsel sent Dickerson the requested signed endorsements together with a copy of both the original Action Complaint and the Count II amendment (Dolinko Aff. ¶ 7; D. Ex. 8 at 1–

---

5. Employers responds to D. 12(m) ¶ 13 by admitting only that Wests' counsel indicated "that they might amend the Wests' complaint in the future," and by stating that the testimony at Bodi Dep. 74 and 85 does not "unequivocally establish" the "facts" asserted in D. 12(m) ¶ 13 (see P. 12(n) ¶ 13). That partial demurrer apparently means that Bodi's deposition testimony does not establish the content of the conversation as portrayed. In fact Bodi Dep. 85 expressly states that Wests' counsel said they would likely file an amended complaint "seeking damages against" Bodi & Wachs. Because Employers has offered no evidence to contradict that, it is accepted as true.

2). Counsel's forwarding letter reiterated that Bodi & Wachs was then involved in the Action only for purposes of discovery (D. Ex. 8 at 1). But Bodi & Wachs' counsel went on to say (D. Ex. 8 at 1–2):

> that on January 18, 1993, the plaintiffs' counsel, for the first time, stated affirmatively that they were going to attempt to articulate a claim of some type against Bodi & Wachs and/or Mr. Bodi, and would do so by amended pleading at some time in the near future. This, we believe, would now constitute appropriate notice of claim or suit under ... the policy.

Shortly thereafter Bodi & Wachs received the original Policy (Dolinko Aff. ¶ 7).

On March 19, 1993 Wests in fact served Bodi & Wachs with an Amended Complaint for Declaratory Judgment, Fraud, Negligence and Money Damages (the "Amended Action Complaint"). Its Count III, titled "Negligence v. Bodi & Wachs Aviation Insurance, Inc.," asserted a money claim against Bodi & Wachs for up to $5 million (D. Ex. 9 at 15–17). On March 23 Bodi & Wachs' counsel forwarded a copy of the Amended Action Complaint to Dickerson (D. Ex. 10). On March 30 Dickerson responded that Employers was declining coverage on the grounds that Bodi & Wachs had violated the Policy (D. Ex. 11):

> by the agency's failure to give notice of the captioned claim as soon as practicable upon becoming aware and/or knowledgeable of the circumstances likely to result in the claim which has been made and, secondly, by failure to immediately give notice of any suit or other proceeding instituted against it.

To evaluate the parties' legal positions, the only other facts that need to be set out here relate to terms of the Policy itself. Here are the potentially relevant provisions (with the use of boldface type indicating terms that are defined within the Policy):

## I. INSURANCE PROFESSIONALS ERRORS AND OMISSIONS LIABILITY

The Company will pay on behalf of the Insured all sums which the **Insured** shall become legally obligated to pay as **damages** because of injury sustained by any person or organization and caused by any negligent act, error or omission of the **Insured** and solely arising out of the conduct of the **Named Insured's** business as an insurance agent, insurance broker, insurance general agent, surplus lines insurance broker, insurance consultant, employee insurance benefits counselor, estate insurance planner, insurance claims administrator, insurance appraiser, insurance premium financier or notary public.

The Company shall have the right and duty to defend any **covered claim** or **suit** against the **Insured** seeking damages, even if the allegations of the **covered claim** or **suit** are groundless, false or fraudulent, and may make such investigation and settlement of any **covered claim** or **suit** as it deems expedient, except as provided by Condition 5. **Consent to Settle.**

\*　　\*　　\*　　\*　　\*　　\*

## II. EXCLUSIONS

This insurance does not apply to any **claims:**

\*　　\*　　\*　　\*　　\*　　\*

> E. arising out of acts, errors or omissions known by the **Insured** at the original first inception date of a policy or policies of this Company which provide uninterrupted coverage; [6]

\*　　\*　　\*　　\*　　\*　　\*

## III. APPLICATION OF CLAIMS MADE POLICY

This policy applies only to **claims** for which coverage is provided hereunder and then only where such **covered claim** is first made and reported to the Company during the **policy period**.... A **claim** for injury shall be considered as being first made at the earlier of the following times:

A. When **claim** is first made against the **Insured** for the injury, or

B. When notice is first given to the Company by or on behalf of the **Insured** of specific circumstances involving a particu-

---

6. [Footnote by this Court] This provision as such has really not been placed in issue by Employers.

It has not argued in terms that Wests' claim is excluded from coverage under Policy ¶ II.E.

lar person or organization which may result in a **claim** for injury.

\* · \* \* \* \* \*

## X. DEFINITIONS

When used in this policy (including endorsements forming a party thereof):

"**Claim**" shall include all **claims** or **suits** for **damages** arising out of the same negligent act, error or omission of one or more **Insureds.**

\* \* · \* \* \* \*

"**Covered claim**" means any **claim** for which coverage is provided by this policy. "**Damages**" means monetary judgment, award or settlement including compensatory, punitive or exemplary **damages** but does not include fines or penalties or **damages** for which insurance is prohibited by the applicable law.

\* \* \* \* \* \*

## XI. CONDITIONS

\* \* \* \* \* \*

### 3. Notice of Claim or Suit

In the event of any circumstance likely to result in a **claim** to which this insurance applies, written notice shall be given by or on behalf of the **Insured** to the Company as soon as practicable. If thereafter any **suit** or other proceeding is instituted against the **Insured,** the **Insured** shall immediately inform the Company in like manner. The **Insured** shall, upon request, furnish the Company with copies of investigations, pleadings and all other papers relating to such **suit** or proceedings.

*Background Legal Principles*

Employers is a Wisconsin corporation with its principal place of business in Wausau, while Bodi & Wachs is an Illinois corporation with its principal place of business in Waukegan (D. 12(m) ¶¶ 1–2). Because the amount in controversy is potentially as much

as the Policy's $500,000 coverage limit, diversity jurisdiction exists under 28 U.S.C. § 1332(a). And because the parties have argued only Illinois law in their submissions, it is appropriate to look to Illinois as the source of the applicable substantive rules of decision (*Wood v. Mid–Valley Inc.,* 942 F.2d 425, 426–27 (7th Cir.1991)).

Under Illinois law the interpretation of an insurance policy is a question of law for the court and is therefore appropriate grist for the summary judgment mill (*Crum & Forster Managers Corp. v. RTC,* 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993)). Where policy provisions are ambiguous—that is, are "subject to more than one reasonable interpretation"—they are to be construed in favor of the insured and against the insurer (*United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 74, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991)). That contra proferentem principle is applied with added rigor in determining the meaning of provisions that exclude coverage (*Goldblatt Bros., Inc. v. Home Indem. Co.,* 773 F.2d 121, 125 (7th Cir.1985), quoting *Dawe's Lab. N.V. v. Commercial Ins. Co.,* 19 Ill.App.3d 1039, 1049, 313 N.E.2d 218, 225 (1st Dist.1974)), which will be enforced "only where the terms are clear, definite, and explicit" (*Economy Fire & Casualty Co. v. Kubik,* 142 Ill.App.3d 906, 908, 97 Ill.Dec. 68, 71, 492 N.E.2d 504, 507 (1st Dist.1986)). On the other hand, no policy language should be rendered meaningless surplusage—instead all of the language must be read in accordance with its plain and ordinary meaning (*Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 108, 122–23, 180 Ill.Dec. 691, 699, 706, 607 N.E.2d 1204, 1212, 1219 (1992)).

*Employers' Arguments*

Here the Policy requires that any **covered claim** must have been both "first made and reported to the Company during the **policy period.**" [7] And this opinion has earlier quot-

7. As that language indicates, the Policy was a "claims made" rather than an "occurrence" type of E & O policy. For a discussion of the difference between the two types, see this Court's discussion in *National Union Fire Ins. Co. v.*

*Continental Illinois Corp.,* 673 F.Supp. 300, 303–04 (N.D.Ill.1987). In that respect Bodi & Wachs says that until the November 1992 depositions in the Action Bodi did not know either that his firm had applicable E & O insurance or that there

ed the Policy's provisions as to the time when notices must be given to Employers both as to **claims** and as to **suits.** It will be recalled that Dickerson's March 30, 1993 letter rejecting coverage on Employers' behalf had pointed to Bodi & Wachs' claimed breach of both of those requirements—and those contentions are echoed in Employers' arguments on the current motions, in which it urges that:

1. Wests "first made" a **claim** against Bodi & Wachs on two occasions before the Policy's inception date. Because the **claim** was therefore not "first made" during the **Policy period,** it is not covered.

2. Bodi & Wachs violated its Policy obligation to give Employers immediate notice of the **suit.** It first informed Employers of the Action (and thus assertedly of Wests' **claim**) on December 28, 1992, though it had first received notice of the Action (and purportedly the **claim**) in late February or early March 1992.

■ Before this opinion turns to those arguments, it is worth spending a moment or two on another argument that—even though perhaps potentially available to it—Employers cannot advance in this case. It is in the context of insurer-insured disputes as to coverage that Illinois courts first articulated and have regularly applied the doctrine forbidding a party to "mend its hold"—the doctrine that teaches that when a party initially asserts a specific reason or reasons for its being freed from an otherwise binding contractual obligation, it will not be allowed to advance any different or additional grounds during the course of litigating the matter (see, e.g., the extended discussion in *Larson v. Johnson,* 1 Ill.App.2d 36, 39–46, 116 N.E.2d 187, 188–92 (1st Dist.1953); and among the federal cases applying Illinois law to that effect, see, e.g., *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 362–64 (7th Cir.1990) and this Court's opinions in *Camelot Care Centers, Inc. v. Planters Life-*

*savers Co.,* 836 F.Supp. 545, 554 & n. 15 (N.D.Ill.1993) and cases cited there).

In this instance both that doctrine and another well-established principle foreclose Employers from presenting a third contention that it had asserted in its Amended Complaint ¶ 23: that Bodi & Wachs purportedly violated the ·Policy by failing to give Employers notice of Wests' **claim** "as soon as practicable." Although Employers has sought on its current motion simply to defer consideration of that issue "as sufficient facts have .not yet been developed to entitle Employers to judgment on this point" (its Mem. 2 n. 1), the total omission of that third contention from Employers' original declination of coverage creates a "mend your hold" type of bar. But even were that not so, it must be remembered ·that Bodi & Wachs too have moved for summary judgment. As the party responding to that motion, Employers was duty bound to wheel out all its artillery to defeat it—it could not hold back and then, if unsuccessful, point to other grounds that it should have advanced but did not (see, e.g., *Ryan v. Chromalloy Am. Corp.,* 877 F.2d 598, 603–04 (7th Cir.1989); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985), quoting this Court's opinion in *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd and adopted,* 736 F.2d 388, 393 (7th Cir.1984)).

Thus this opinion need address only the two arguments that Employers did advance, and that Bodi & Wachs attacked, on the current cross-motions. And because those arguments are capable of resolution as a matter of law, they call for a final disposition of the coverage controversy between the parties.

*When Was Wests' **Claim** "First Made"?*

■ As already quoted from the Policy, its language defines "a **claim** for injury" as

was any type of E & O insurance written other than occurrence policies (D. 12(m) ¶¶ 12, 17; Bodi Dep. 86). It was only after a deposition session that Employers'.claims made Policy was found and that Bodi & Wachs' counsel explained to Bodi what claims made policies are (D. 12(m) ¶ 17; Dolinko Aff. ¶ 6; Bodi Dep. 86). "However, when a party makes no showing of a diligent attempt to discover the existence of the policy,

lack of knowledge will not excuse his failure to comply with its terms" (*American Country Ins. Co. v. Cash,* 171 Ill.App.3d 9, 11, 120 Ill.Dec. 834, 836, 524 N.E.2d 1016, 1018 (1st Dist.1988)). Accordingly the Policy will be enforced in accordance with its terms, and this opinion turns to that task (see *Del Grosso v. Casualty Ins. Co.,* 170 Ill.App.3d 1098, 1102, 120 Ill.Dec. 860, 862, 524 N.E.2d 1042, 1044 (1st Dist.1988)).

having been "first made" at the earlier of two dates. Because the second of those alternatives is inapplicable here, the relevant provision is the first:

A. When **claim** is first made against the **Insured** for the injury....

"Claim" is a term of art, a boldface term defined in part in the Policy to encompass "all **claims** or **suits** for **damages** arising out of the same negligent act, error or omission." And **"damages"** is expressly defined to mean "monetary judgment, award or settlement." But even though "claim" (unlike **"damages"**) is spoken of in the Policy in terms of what it "includes" rather than what it "means," in the absence of any evidence to the contrary (and there is none) it is presumed to have its common (and common sense) meaning (*Evanston Ins. Co. v. Security. Assurance Co.*, 715 F.Supp. 1405, 1412 (N.D.Ill.1989)), one that conforms to the standard dictionary definition of the word (*Black's Law Dictionary* 247 (6th ed. 1990)):

Demand for money or property as of right, e.g., insurance claim.

In this instance both Wests' original Action Complaint and the amendment that added Count II to keep Bodi & Wachs as a defendant sought only a declaratory judgment as to what insurance coverage Eagle Air actually had. Illinois is not a direct action state (unlike Louisiana and a few other states), so that Wests' claim was not one that was framed as one seeking damages—monetary relief—even against TransAmerica as the insurer issuing the policy that covered Eagle Air. Wests were simply suing for a declaration that their injuries were covered by that policy for purposes of their claim against Eagle Air, *not* for damages if that coverage did *not* exist. And surely that applies a fortiori as to Bodi & Wachs: No **claim** for **damages** was being made against it either. If anything, that obvious fact was really fortified by the insertion into the Action Complaint of Count II, which kept Bodi & Wachs in the Action only as a respondent from whom discovery was sought.

■ Nor is that conclusion altered by the Action Complaint's inclusion of the standard boilerplate in the prayer for relief, immediately following the three requests for declaratory relief:

D. for such other and further relief as the Court deems fit and proper....

On the rare occasions when that catchall prayer is dealt with in the cases, it is seen as playing the role of allowing modifications of or additions to the relief requested in light of facts adduced during a legal proceeding (see *Bryan v. Bryan,* 452 S.W.2d 293, 296–97 (Mo.Ct.App.1970)). As the phrase reads both literally and in practical terms, it does not operate as an independent request for relief of any sort, but rather serves a function similar to allowing amendment of a complaint to conform to the proofs adduced at trial (735 ILCS 5/2–616(c); *Stringer Constr. Co. v. CHA,* 206 Ill.App.3d 250, 258, 150 Ill.Dec. 692, 697, 563 N.E.2d 819, 824 (1st Dist.1990)). It cannot fairly be said that such a backstop provision, which does not itself request any particular relief but rather permits some further type of relief (one that is presently unspecified) to be fashioned by the court during or at the end of a legal proceeding, had made a **claim** against Bodi & Wachs for money **damages.**

■ Even though neither the original Action Complaint nor the April 1992 amendment that added Count II against Bodi & Wachs thus constituted a **claim** "first made" against it before the Policy took effect, Employers urges that the April 15, 1992 letter sent by Wests' counsel to counsel for Bodi & Wachs (sent in conjunction with the amendment) served that function. In that letter Wests' lawyer (quoting Action Complaint ¶¶ 12, 18 and 21) wrote to Bodi & Wachs' lawyer that his client's E & O carrier "is *potentially* involved" and that the catchall prayer "for such other and further relief as the Court deems fit and proper" "[i]nclude[s] ... the *potential* of a negligence claim against Bodi & Wachs" (emphasis supplied).

Neither of those statements of "potentiality" amounts to the actual *making* of a **claim** against Bodi & Wachs. Indeed, if there were any doubt on that score it would be dispelled by the fact that fully seven months elapsed between that statement of a "potential" negligence claim and the November 1992 statement by Wests' counsel that such a claim had

become "likely"—and four more months elapsed before that "likelihood" was translated into an actuality by Wests' amendment of the Action Complaint to include a real **claim** against Bodi & Wachs.

So Employers cannot succeed, under the language that it has chosen to insert in its own Policy, in characterizing Wests as having "first made" a true **claim** against Bodi & Wachs before the Policy's inception date in August 1992 (cf. *Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864, 865–66 (9th Cir.1979) (holding that a letter is not a "claim" when it merely questions a lawyer's acts rather than affirmatively asserting a money claim), cited in *Gibraltar Casualty Co. v. A. Epstein & Sons, Int'l, Inc.*, 206 Ill. App.3d 272, 279–80, 150 Ill.Dec. 236, 241, 562 N.E.2d 1039, 1044 (1st Dist.1990)).[8] This Court has not donned blinders in so ruling—it is of course aware that the April 1992 letter from Wests' lawyer might arguably be characterized as a "circumstance likely to result in a **claim** to which this insurance applies...." And this Court is equally aware that Policy Condition 3 ("Notice of Claim or Suit") provides that in the event of any such circumstance, the insured is to give written notice to Employers "as soon as practicable."

But under the circumstances of this action, that arguable characterization cannot help Employers. For one thing, of course that provision could not obligate Bodi & Wachs to notify Employers when or shortly after its counsel received the April 1992 letter from Wests' lawyer—at that time the Employers Policy did not even exist. More importantly, even if the "as soon as practicable" language were somehow to be related to a time after issuance of the Policy (sort of the insurance law equivalent of what was termed a "springing use" in the law of future interests), Employers has never made that argument—and this Court will not make it for Employers. When Employers itself cannot shift its con-

tentions in midsuit under the doctrine that bars it from "mending its hold," it cannot look to a court to "mend its hold" for it.

But even that is not the end of the reasons for rejecting such a potential argument. Even if Employers *had* raised the issue, it could not have prevailed on a contention that Bodi & Wachs violated the quoted portion of Policy Condition 3. Under Illinois law, insurance policy language equivalent to the phrase "likely to result in a **claim**" have been held to vest in the insured discretion in determining when an insurer must be given notice (*Hartford Accident & Indem. Co. v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 231 Ill.App.3d 143, 150–51, 172 Ill.Dec. 641, 646, 595 N.E.2d 1311, 1316 (1st Dist.1992); *Imperial Casualty & Indem. Co. v. CHA*, 987 F.2d 459, 462 (7th Cir.1993)). Factors relevant to determining whether the insured abused that discretion are (1) when the insured "reasonably determined that the probability existed" that the policy's coverage "would be implicated" and (2) "whether the insurer has been prejudiced by the timing of the notice" received from the insured (*Hartford Accident*, 231 Ill.App.3d at 151, 172 Ill. Dec. at 646, 595 N.E.2d at 1316).

As already discussed, at the time that the Policy issued in August 1992 the most recent message to Bodi & Wachs was the nearly four-month-old letter from Wests' lawyer that had spoken only of "the potential of a negligence claim." It was not until November 1992 that the "potential" label was converted to "likely"—and Bodi & Wachs' lawyer notified Employers of *that* likelihood the following month (three months before the negligence claim became an actuality). Thus even if the "potential" of a **claim** were somehow equated to its being "likely"—a distortion of the Policy's language—only something over four months had elapsed between the Policy's inception date and the notice to Employers, while if the relevant date is indeed when the **claim** was described as "likely" by

8. Employers reposes misplaced reliance on *National Union Fire Ins. Co. v. Baker & McKenzie*, 997 F.2d 305, 307–08 (7th Cir.1993) as standing for the proposition that a **claim** was "first made" against Bodi & Wachs before the **Policy period**. What is at issue in every case dealing with the sufficiency of notice of a claim to an assured are

both the language of the particular insurance policy at issue in the case *and*—a point that has been made several times in this opinion—the contentions made by the parties. Both of those aspects in this case differ materially from those in *National Union, id.* at 306, so that the outcome in that case cannot control here.

the putative claimant (thus mirroring the Policy language) something between one and two months elapsed before that notification. In either case Employers has not even hinted at any prejudice suffered during the time interval involved.[9] Even with reasonable inferences in Employers' favor, then, it would lose as a matter of law on the argument that it never made.

### When Did Bodi & Wachs Have To Give Notice of the Suit?

■ This opinion has already dispatched one argument that Employers has made and two that it did not. It remains only to deal with Employers' second contention: that it is released from its contractual obligation to defend Bodi & Wachs in the Action because the latter did not immediately inform Employers of the Action, assertedly in contravention of the second sentence of Policy Condition 3 (the portion emphasized below):

> In the event of any circumstance likely to result in a **claim** to which this insurance applies, written notice shall be given by or on behalf of the **Insured** to the Company as soon as practicable. *If thereafter any* ***suit*** *or other proceeding is instituted against the* ***Insured***, *the* ***Insured*** *shall immediately inform the Company in like manner.* . . .

As Employers would have it, Bodi & Wachs violated that provision because it first received notice of the Action in February or early March 1992 but informed Employers only on December 28, 1992. Employers Mem. 9 says:

> It would be absurd to consider notice given nine to ten months after suit is brought as "immediate."

But in those terms it is Employers' counsel who are being absurd. In February and March 1992 Bodi & Wachs' E & O coverage was provided by General (see n. 2)—Employers was not on the scene at all. It is sheer nonsense for Employers to suggest that Bodi & Wachs had then breached a provision of a nonexisting policy by failing to give notice of the Action to noninsurer Employers.[10]

■ Once again this opinion might stop at this point. Having shown the lack of merit in Employers' position as its counsel have framed that position, this Court has no obligation to deal with a quite different position that might have been but was never advanced by Employers: that notice of the Action should have been given to Employers "immediately" after some date other than the time the Action was instituted. Nonetheless, a few words may be said on that score.

What should be viewed as the other triggering date for informing Employers? By definition it could not precede the Policy's inception date, for it was only when the Policy came into being that the Policy's provisions (and the obligations that they created) could become effective. But at the Policy's August 1992 inception date, no **suit** for **damages** had been instituted against Bodi & Wachs. Nor, as already stated, had Bodi & Wachs been advised that such a **claim** (a suit for **damages**) was "likely"—under Condition 3, a *minimum* precondition for any required notice to Employers that "any **suit** or other proceeding is instituted" at any time "thereafter." That notice of a "likely" **claim** was not given to Bodi & Wachs' counsel until November 1992.

And when "thereafter" was the **suit** for **damages** "instituted" against Bodi & Wachs? Not until March 1993—and by then Bodi & Wachs had already informed Employers (in December 1992). So the situation is parallel to those discussed earlier: Employers' contention must be rejected in the form that it has been presented, and even though it need not be considered in some other form, the contention fails in a modified form as well.

### Conclusion

Because there is no genuine issue of material fact as to Employers' obligation to de-

---

9. Recall that Employers was notified by Bodi & Wachs nearly three months *before* Wests actually asserted their **claim** against it. Although that fact is not of course determinative of the prejudice issue, it is certainly relevant (especially with Employers having placed nothing at all on the other scale in the balance).

10. Nor would Employers have standing to complain of Bodi & Wachs' failure to give notice to General (an argument that Employers has not made in any event).

fend Bodi & Wachs against Wests' Action, this Court finds and orders as a matter of law that Bodi & Wachs is entitled to such defense. And because Employers has also failed to raise any genuine issue of material fact as to its obligation to pay all sums that Bodi & Wachs may become legally obligated to pay to Wests as damages because of Bodi & Wachs' negligent acts, errors or omissions, this Court also finds and orders as a matter of law that Employers is fully liable in that respect in connection with the Action (restricted of course by the applicable Policy limits). In sum, Bodi & Wachs' Rule 56 motion is granted in its entirety, while Employers' motion is denied.