PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellee, v. ALBERT KERWIN *et al.*, Defendants-Appellants (Tore G. Leno, Defendant).

First District (3rd Division)   No. 1—89—1485

Opinion filed June 12, 1991.

Pappas, Power & Marcus, of Chicago (Debra K. Marcus, William R. Power, and Stephen J. Tasch, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Katherine S. Dedrick, Jeffrey A. Siderius, and Kathryn A. Spalding, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Prudential Property & Casualty Company (Prudential) brought a declaratory judgment action against defendants Albert and Patricia Kerwin and its insured, defendant Tore G. Leno. In an underlying personal injury suit, Albert and Patricia Kerwin alleged that Leno negligently or intentionally shot Albert Kerwin and that they were entitled to compensatory and punitive damages. In its declara-

tory judgment action Prudential sought a declaratory judgment that its homeowners insurance policy did not afford coverage to Leno for the injuries claimed to have been suffered by Albert and Patricia Kerwin. Prudential's complaint for declaratory judgment alleged that no coverage exists because Leno's act was expected or intentional and therefore excluded under the policy, and that claims for punitive damages are not covered by the policy. The circuit court granted Prudential's motion for summary judgment on the basis that Leno's act was intentional. The circuit court also ruled that punitive damages are not covered under the policy. Albert and Patricia Kerwin have appealed. We affirm.

On March 30, 1985, Leno, age 38, left his house at 4 p.m. and went to Rick's Lounge in Chicago. After drinking scotch and coke for several hours, he left Rick's Lounge and proceeded to Yesterday's Lounge, where he continued to drink scotch and coke. After leaving Yesterday's Lounge with a companion, Leno stopped at another lounge where he met his son. Leno, his companion, and his son left the lounge and proceeded to Lizzio's Tavern. Leno does not recall at what time he arrived at Lizzio's Tavern.

At approximately 3 a.m., Albert and Patricia Kerwin were walking towards the parking lot near Lizzio's Tavern when they encountered Leno standing about 10 feet away, near the door to the tavern. Leno was very intoxicated. Words were exchanged between Leno and the Kerwins. Leno said something derogatory to Patricia Kerwin. Albert Kerwin responded by saying, "Fuck you jack off!" Leno pulled out a pistol which he sometimes carried with him while working as a self-employed carpenter. He fired at Albert Kerwin, striking him in the lower chest. Albert Kerwin was hospitalized for 30 days and required several surgical procedures for his injury.

Leno testified at his deposition that he was so intoxicated that he does not recall either the events leading up to the shooting or the shooting itself. Leno further testified that he had not previously met either Albert or Patricia Kerwin, and he does not know why he shot Albert Kerwin.

Leno was charged with two counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). He pled guilty to one count of aggravated battery, and all other charges were dropped. Pursuant to his guilty plea, Leno was sentenced to 30 months' probation.

On October 8, 1985, Albert and Patricia Kerwin filed a personal injury action against Leno for the damages they suffered as a result of the shooting incident. They alleged that Leno had acted negligently

or intentionally when he shot Albert Kerwin. Patricia Kerwin also alleged that Leno was liable for negligent infliction of emotional distress, loss of consortium and damages for which she may be responsible under the family expense statute. Ill. Rev. Stat. 1983, ch. 40, par. 1015.

Prudential first became aware of the shooting incident and the personal injury action on April 8, 1986, when it was informed by the Kerwins' attorney. At that time, Leno was represented in the personal injury action by his personal attorney, Robert Stevenson. On April 30, 1986, Prudential sent Stevenson and Leno a reservation of rights letter by certified mail. The letter informed Leno that he may not be entitled to any rights or benefits under his policy and that Prudential may not have any duty or obligation under the policy because the policy specifically excluded coverage for bodily injury which is "expected or intended by the insured." The letter also informed Leno that the policy did not afford coverage for punitive damages. In addition, the letter informed Leno that the policy required written notice of the occurrence and the lawsuit "as soon as practicable," and that he therefore had not complied with the policy's notice requirements. Finally, the letter informed Leno that it had hired the law firm of McKenna, Storer, Rowe, White & Farrug (McKenna, Storer) to provide a defense for him on the negligence counts of the personal injury action, subject to Prudential's reservation of rights.

Stevenson responded by advising Prudential and McKenna, Storer that Leno's defense in the personal injury suit was not being tendered to Prudential and that Prudential should not pay any defense fees on behalf of Leno. Later, in December 1986, Stevenson advised Prudential that Leno was not tendering his defense to Prudential because the shooting was intentional. On January 7, 1987, however, Stevenson requested Prudential to pay his attorney fee for representing Leno in the personal injury suit. Stevenson repeated, however, that Leno's defense was not being tendered to Prudential. Prudential then agreed to pay Stevenson's attorney fee, and requested that Stevenson keep it apprised of the status of the personal injury suit. McKenna, Storer did not file an appearance on behalf of Leno in the personal injury suit, and it closed its file in April of 1987. Stevenson continued to represent Leno in the personal injury suit.

On April 2, 1987, Prudential filed the declaratory judgment action *sub judice*. On September 25, 1987, a default judgment order was entered against Leno in the personal injury suit. On November 18, 1987, a default judgment was entered in favor of Albert Kerwin for

$300,000 and in favor of Patricia Kerwin for $50,000. Prudential did not learn of the default judgment until January 1988.

The default judgment has not been vacated. Prudential, however, moved for a summary judgment in the declaratory judgment action. On May 10, 1989, the trial court granted summary judgment in favor of Prudential on the basis that the shooting of Albert Kerwin was not covered under Prudential's policy because the shooting was an intentional act. The trial court also ruled that punitive damages are not covered under the policy. The Kerwins admit that Prudential's policy did not afford coverage for an award of punitive damages.

The Kerwins first contend that the facts are not sufficient to establish as a matter of law that Leno intended to "injure Albert Kerwin pursuant to Prudential's Intentional Act Policy Exclusion." We disagree.

■ The facts that led to the shooting are not in dispute. Leno insulted Patricia Kerwin. Albert Kerwin responded by shouting an obscenity at Leno. Leno drew a gun, and then pointed it at Albert Kerwin and shot him while he was only 10 feet away. Albert Kerwin was not armed, and there was no physical threat to Leno. There is nothing to suggest that the gun was accidentally discharged. Plainly, the undisputed facts leave no doubt that Leno intended to injure Albert Kerwin.

The Kerwins argue, however, that Leno had a right to explain his guilty plea to aggravated battery and that the trial court therefore erred in accepting the guilty plea as conclusive evidence of Leno's intent to shoot Albert Kerwin. A person commits a battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. (Ill. Rev. Stat. 1983, ch. 38, par. 12—3.) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery. Ill. Rev. Stat. 1983, ch. 38, par. 12—4.

■ Although a plea of guilty in a criminal case is subject to explanation in a related civil case, in the present case Leno's guilty plea to aggravated battery merely corroborates the uncontradicted facts of the shooting as established by the summary judgment proceedings. It follows that although Leno would have had a right to explain his guilty plea in the event of a trial in a civil case, that fact in itself did not cause a question of fact to surface in the proceeding for summary judgment. Where the factual circumstances in the civil case compel a conclusion, as a matter of law, that an insured's act was intended, a

summary judgment is properly entered in favor of the insurer whose policy excludes coverage for intended acts. Summary judgment is not precluded because the insured's plea of guilty in a related criminal case corroborates the facts that are established in the summary judgment proceeding. (See *Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 492, 494, 451 N.E.2d 880, 882.) The Kerwins' argument is therefore without merit.

The Kerwins next argue that there is a question of fact as to whether the shooting was intentional because Leno's intoxication was so extreme. It is the Kerwins' theory that an insured's voluntary intoxication can nullify an insurance policy exclusion for intentional acts. We disagree.

In criminal cases, it is an affirmative defense if a defendant's voluntary intoxication is so extreme as to suspend the power of reason and to render him incapable of forming a specific intent which is an element of the offense. (Ill. Rev. Stat. 1989, ch. 38, pars. 6—3, 6—4.) The Kerwins wish to make a quantum transition from voluntary intoxication being an affirmative defense to a specific intent crime, to voluntary intoxication relieving citizens from the consequences of their acts in civil cases. We reject the Kerwins' attempted transition of an affirmative defense of criminal law to civil law.

■■ Plainly, in civil cases it would be against public policy to relieve citizens of the consequences of their acts based upon their voluntary intoxication. It follows that an insured cannot be heard to argue that he did not intend to do an otherwise intentional act on the basis that he was voluntarily intoxicated and thereby claim coverage under an insurance policy that excludes coverage for intentional acts. The law cannot be perverted to reach a result which would be inimical to public policy.

■■ ■ Moreover, when dealing with exclusions in insurance policies, the court's primary purpose is to give effect to the intention of the parties as expressed by the words that are used in the policy. The words that are used will ordinarily be interpreted according to their plain and popular sense. Here, the exclusion in the policy states that coverage does not apply to bodily injury which is "intended by the insured." In the plain and popular sense, a person intends the consequences of his acts while voluntarily intoxicated if the acts are otherwise intentional. Thus, since the act of shooting in the present case was otherwise intentional, Leno's voluntary intoxication cannot be held to make the shooting unintentional. We therefore give effect to the intention of the parties to the insurance policy by holding that the

bodily injury from the shooting was intended by Leno and that Leno's act was excluded from coverage under the policy.

The Kerwins next contend that there is a conflict of interest between Prudential and Leno because the Kerwins charged that the shooting by Leno was negligent or intentional, and that Prudential is estopped from asserting any policy defenses because Prudential violated the conflict of interest principles expounded in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, and *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335. In *Thornton* and *Urso*, the supreme court held that where there is a conflict of interest between an insured and the insurer, the insurer must not participate in the insured's defense but it must pay for the insured's defense and the fee for the insured's personal attorney.

■ The Kerwins argue that Prudential is estopped from asserting any policy defense because Prudential had hired McKenna, Storer to represent Leno when Prudential advised Leno that there was a possible conflict of interest between Prudential and Leno. The record is clear, however, that Leno never agreed to have McKenna, Storer represent him and Leno never tendered his defense to McKenna, Storer. Also, McKenna, Storer never filed an appearance on behalf of Leno in the personal injury suit. Thus, McKenna, Storer did not participate in Leno's defense. Prudential, however, paid for Leno's defense and paid the fee for Leno's personal attorney. Under the circumstances, the Kerwins' argument is without merit.

■ The Kerwins also argue that Prudential is estopped from asserting any policy defense because Prudential asked Leno's personal attorney to keep it advised of the status of the personal injury suit. At no time, however, did Prudential participate in the defense of the personal injury suit, nor did Prudential tell Leno's personal attorney what to do in defending the personal injury suit. As a result, Prudential did not violate the principles set forth in *Thornton* and *Urso*. An insurer does not violate the principles of *Thornton* and *Urso* by simply being kept advised of the status of the underlying action by an insured's personal attorney.

The Kerwins also argue that "the question of whether the insured has been prejudiced by the insurer's conduct is a question of fact," and therefore summary judgment was improperly entered. This argument has no merit because there is nothing in the record to demonstrate that Leno did not control his own defense or that Prudential participated in the defense itself. Thus, no question of fact has surfaced as to Leno being prejudiced by Prudential's conduct. The Kerwins' argument is therefore untenable.

■ The next contention on appeal is made solely by Patricia Kerwin. She contends that Leno's insurance policy should cover "her cause of action for negligent infliction of emotional distress." This contention has no merit because the alleged cause of action is based on Leno's intentional act of shooting Albert Kerwin, for which there is no coverage under Leno's insurance policy. Since Leno's act is not covered by the policy there is no basis for affording coverage under the policy to Patricia Kerwin's alleged cause of action for negligent infliction of emotional distress resulting from the shooting of Albert Kerwin.

In addition, Prudential alleged in its complaint for declaratory judgment that Leno breached the notice conditions of the policy. In view of our conclusions on the other issues, however, we do not address that issue.

Accordingly, the summary judgment in favor of Prudential is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.