INTERSTATE FIRE & CASUALTY COM-
PANY, INCORPORATED, an Illinois
Corporation, Appellant/Cross–Appellee,

v.

1218 WISCONSIN, INC., t/a The Third
Edition, a District Corporation,
Appellee/Cross–Appellant.

Nos. 97–7046 & 97–7050.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 19, 1997.

Decided March 13, 1998.

Douglas M. Coleman, Alexandria, VA, argued the cause for Interstate Fire & Casualty Co., appellant/cross-appellee. David D. Hudgins and James P. Bobotek, Alexandria, VA, were on the briefs.

Michael J. Jack, Baltimore, MD, argued the cause and filed the brief for The Third Edition, appellee/cross-appellant.

Before EDWARDS, Chief Judge, TATEL, Circuit Judge, and BUCKLEY, Senior Circuit Judge.

BUCKLEY, Senior Judge:

In this diversity case, we consider whether, notwithstanding "assault and battery" and "liquor liability" exclusions in its insurance contracts, an insurer may have a duty to defend a client sued by a patron who was injured by another who was intoxicated. We also address an insured's obligation to indemnify its insurer when, in return for a release from all liability, the insured assigns its claim against its insurer to a third party with whom the insurer then settles.

## I. BACKGROUND

On February 11, 1993, Teresa Williams, a resident of Virginia, was viciously beaten outside The Third Edition, a District of Columbia bar where she and her attacker had been patrons. The Third Edition is owned and operated by 1218 Wisconsin, Inc., a D.C. corporation. Because The Third Edition's employees had allegedly observed the attack without intervening and had allegedly served the attacker substantial amounts of alcohol, Ms. Williams sued both her attacker and The Third Edition. In her complaint, she charged the latter with (1) negligent provision of alcohol to an intoxicated patron, (2) failure to protect a patron, (3) failure to discharge a voluntarily assumed obligation to protect its patrons, and (4) the negligent hiring, supervision, and/or training of employees. As for her attacker, Ms. Williams alleged (1) assault and battery, (2) intentional infliction of emotional distress, and in the event he did not have the intent necessary to support these charges, (3) gross negligence in disregarding the possible consequences of his actions, and (4) negligent intoxication.

At the time of the attack, The Third Edition was insured by Interstate Fire & Casualty Company ("Interstate"). The parties agree on appeal that at all relevant times Interstate's contract with The Third Edition included "assault and battery" and "liquor liability" exclusions. These exclusions bar coverage for personal injury claims arising respectively from "assault and/or battery; or . . . any act or omission connected directly or indirectly with the prevention or suppression of an assault and/or battery" and from "[c]ausing or contributing to the intoxication of any person."

On the basis of those exclusions, Interstate declined to defend The Third Edition against Ms. Williams' suit. Just prior to trial, The Third Edition reached a settlement with Ms. Williams. In exchange for being released from all liability, The Third Edition stipulated to a $1 million judgment and assigned its entire interest in the Interstate policy to Ms. Williams. The district court, which was not apprised that Ms. Williams was foregoing her right to enforce the judgment directly against The Third Edition, approved the settlement, and, in February 1995, entered a consent judgment against The Third Edition in the amount of $1 million. Interstate

sought to intervene after entry of the judgment, but its motion was denied.

Interstate then filed a declaratory judgment action against The Third Edition, Ms. Williams, and the agent who had negotiated the original insurance contract on behalf of The Third Edition, seeking, in relevant part, to be absolved of all liability and to be indemnified for all legal fees and costs incurred as a result of the allegedly collusive settlement between The Third Edition and Ms. Williams. Ms. Williams filed a counterclaim against Interstate, seeking enforcement of the $1 million judgment. Because Interstate had refused to defend it against her claims, The Third Edition filed a counterclaim against the insurer for indemnification of the legal costs incurred in defending itself against Ms. Williams' suit.

The claims between Ms. Williams and Interstate were voluntarily dismissed after Interstate agreed to pay her $275,000. Interstate and The Third Edition then filed competing summary judgment motions, each seeking indemnification. The court granted summary judgment to Interstate on the duty to defend, holding that the insurance policy did not cover Ms. Williams' claim against The Third Edition, but otherwise denied the motion. The court denied The Third Edition's counterclaim in its entirety. Interstate now appeals the district court's holding that it is not entitled to indemnification for the amount of the settlement and for the attendant legal costs. The Third Edition cross-appeals the court's decision that Interstate had no duty to defend it against Ms. Williams' suit.

The district court had diversity jurisdiction over this claim under 28 U.S.C. § 1332 (1994), and we have jurisdiction pursuant to 28 U.S.C. § 1291 (1994). Because the District of Columbia is the only jurisdiction with any significant interest in the outcome of this suit, the case is governed by District law. *See District of Columbia v. Coleman,* 667 A.2d 811, 816–18 (D.C.1995) (discussing "governmental interests" analysis in choice of law). We review the district court's judgment *de novo. See Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Because the outcome of Interstate's claim is in part contingent on the resolution of certain issues that arise in The Third Edition's cross-appeal, we first consider the latter.

## II. DUTY TO DEFEND

■ The Third Edition asserts that Ms. Williams' allegations in her original complaint fall within the scope of the insurance contract's duty to defend and that Interstate should now indemnify it for the funds it expended in defending against Ms. Williams' suit. Under District of Columbia law, "if it is possible that the allegations of a complaint would bring it within coverage of the policy, the insurer is obligated to defend, even if it ultimately is not required to pay a judgment." *American Continental Ins. Co. v. Pooya,* 666 A.2d 1193, 1198 (D.C.1995). Thus in the District, as in most states, the duty to defend is broader than the duty to indemnify. *S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.,* 396 A.2d 195, 197 (D.C.1978). Although Interstate is obliged to defend The Third Edition against any claims that arguably are covered by the policy, it has no duty to defend claims arising from conduct that falls within the terms of either the assault and battery or the liquor liability exclusion.

■ Ms. Williams' first claim against The Third Edition and part of her fourth claim allege affirmative conduct on the part of The Third Edition that is plainly covered by the terms of the liquor liability exclusion, which exempts from coverage any injury resulting from The Third Edition's "[c]ausing or contributing to the intoxication of any person." The first claim seeks compensation for The Third Edition's negligent provision of drinks to Ms. Williams' attacker after he was already intoxicated; the fourth claim alleges, in part, the negligent hiring, training, and supervision of those who served her attacker excessive amounts of alcohol. Neither the remaining causes of action nor the remainder of the fourth claim, which concerns the negligent hiring, training, and supervision of security personnel, alleges conduct on the part of The Third Edition that is subject on its face to the exclusions. Interstate therefore had a duty to defend against those claims unless they were premised upon conduct by some

third party that was otherwise subject to the exclusions.

■ As against her attacker, Ms. Williams alleges assault and battery, intentional infliction of emotional distress, and in the alternative, gross negligence and negligence. Any claim against The Third Edition derived from the assault and battery claim plainly "ar[ose] out of ... assault and/or battery" and therefore is subject to the assault and battery exclusion. The intentional infliction charge similarly alleges that her attacker's "brutal and vicious assault," Williams' Compl. at 5, caused her severe emotional injury. Thus, any claim against The Third Edition derived from that count is also subject to the assault and battery exclusion.

■ In its briefs, The Third Edition appears to argue that neither the gross negligence claim, which alleges that the attacker "acted in a wanton manner and with reckless disregard of the possibility that his conduct would cause severe harm to Williams," *id.* at 6, nor the negligence claim, which states that the attacker was negligent "in becoming so intoxicated that he lost control of his conduct and caused severe harm to Williams," *id.* at 7, fits within either exclusion. Because we find that the negligence count is dispositive, we need not decide whether a claim of gross negligence premised upon the facts alleged here could compel a duty to defend.

Interstate asserts that the negligence claim is indistinguishable from the alleged assault and battery and that recharacterization of the attacker's conduct as "negligent" does not change the nature of the underlying cause of action. Nevertheless, even assuming that the complaint's description of the attack can only be read to allege an assault and battery, *cf. Watwood v. Credit Bureau, Inc.,* 97 A.2d 460, 462 (D.C.Mun.App.1953) (stating that "a party should be bound by statements made in formal pleadings, even if they are not sworn to"), should intoxication be recognized in the District of Columbia as an affirmative defense to a charge of civil assault and battery, Ms. Williams' negligence claim would be distinguishable from one of assault and battery.

■ Because intent is a necessary element of civil assault and battery, *see Madden v. D.C. Transit System, Inc.,* 307 A.2d 756, 757 (D.C.1973), a finding that the defendant did not have the requisite intent would dispose of any cause of action alleging assault and battery. Interstate's insurance contract only excluded conduct pertaining to "the prevention or suppression of an assault and/or battery." Because insurance contracts are read narrowly against the interests of the insurer, *see First Nat'l Bank of Decatur v. Insurance Co. of North America,* 424 F.2d 312, 317 (7th Cir.1970), the phrase "assault and/or battery" must be presumed to have its strict legal definition. Therefore, if it should be the law of the District of Columbia that an intoxicated person does not have the intent necessary to support such a cause of action, the attack on Ms. Williams would not fall within the scope of the assault and battery exclusion and Interstate would be obliged to defend any action seeking redress for any injury resulting from it.

A number of state courts have held that an alleged tortfeasor's intoxication will negate the intent necessary to invoke the "intentional acts" exclusion in insurance policies. *See, e.g., Parkinson v. Farmers Ins. Co.,* 122 Ariz. 343, 594 P.2d 1039, 1041 (1979) (stating in dicta that proof of intoxication could negate capacity to form intent); *State Farm Fire & Cas. Co. v. Morgan,* 185 Ga.App. 377, 364 S.E.2d 62, 64 (1987) (agreeing with "the majority view in other jurisdictions ... that voluntary intoxication may destroy the capacity to form the intent required to invoke a policy exclusion for acts 'intended or expected' by the insured"), *aff'd,* 258 Ga. 276, 368 S.E.2d 509 (1988); *Hanover Ins. Co. v. Talhouni,* 413 Mass. 781, 604 N.E.2d 689, 692 (1992) ("The majority rule is consistent with our prior decisions on the subject which hold that evidence of voluntary intoxication is relevant to determining the presence or absence of intent with reference to an exclusion clause."); *Burd v. Sussex Mut. Ins. Co.,* 56 N.J. 383, 267 A.2d 7, 15 (1970) ("With respect to voluntary intoxication, the public policy considerations applicable to a criminal prosecution are not decisive as to liability insurance coverage."); *Safeco Ins. Co. v. McGrath,* 63 Wash.App. 170, 817 P.2d 861,

864 (1991) ("An insured may be so intoxicated as to be unable to form an intent to commit an act, but this is a question for the trier of fact."); *see also* James L. Rigelhaupt, Jr., Annotation, *Liability Insurance: Intoxication or Other Mental Incapacity Avoiding Application of Clause in Liability Policy Specifically Exempting Coverage of Injury or Damage Caused Intentionally by or at Direction of Insured*, 33 A.L.R.4th 983, § 4 (1984). A similar number of courts have gone the other way. *See, e.g., Allstate Ins. Co. v. Sherrill*, 566 F.Supp. 1286, 1288 (E.D.Mich.1983) ("To allow such a defense would create an intolerable precedent of self-immunity."), *aff'd*, 735 F.2d 1363 (6th Cir. 1984) (table); *Prudential Property & Cas. Co. v. Kerwin*, 215 Ill.App.3d 1086, 159 Ill. Dec. 425, 576 N.E.2d 94, 97 (1991) ("We reject the Kerwins' attempted transition of an affirmative defense of criminal law to civil law."); *American Family Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 422 (Minn.1987) (construing language of policy to exclude intoxication as an affirmative defense); *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661, 664 (Mo.Ct.App.1982) (holding that intoxication does not negate intent because public policy cannot countenance such a defense).

■ Although District of Columbia courts have held that intoxication is not a defense to criminal assault, *see Parker v. United States*, 359 F.2d 1009, 1012 (D.C.Cir.1966), they have not yet addressed the specific issue that is before us. They have held, however, that "[i]n case of doubt [over whether the allegations in a complaint state a cause of action within the terms of the insurance contract] such doubt ought to be resolved in the insured's favor." *Boyle v. National Cas. Co.*, 84 A.2d 614, 616 (D.C.Mun.App.1951). Doubt, of course, may be legal as well as factual. Although California distinguishes between the two, holding that "[t]here is no duty where the only potential for liability turns on resolution of a legal question," *McLaughlin v. National Union Fire Ins. Co.*, 23 Cal.App.4th 1132, 29 Cal.Rptr.2d 559, 570 (1994) (internal quotation marks and citation omitted), no other state has so held. Because District of Columbia law states a broad presumption in favor of the insured, we decline to assume that the D.C. Court of Appeals would follow California's lead. Thus, unless another exclusion applies, Interstate had a duty to defend The Third Edition against any claim arising from the attacker's negligent intoxication.

■ We now consider whether the liquor liability exclusion, whose relevance to two of the claims against The Third Edition we discussed earlier, applies to any claim derived from the conduct of the attacker. The liquor liability exclusion applies only to injuries for which the insured is

held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Neither the third clause nor the first half of the second clause applies to Ms. Williams' claims. While the first clause and the second half of the second clause apply to her charge that The Third Edition had negligently contributed to her attacker's intoxication, neither reaches her claim that The Third Edition failed to protect her from such an attack. Because that claim was not contingent either on The Third Edition's "[c]ausing or contributing" to the attacker's intoxication or on its "furnishing alcoholic beverages to a person … under the influence of alcohol," Interstate had a duty to defend The Third Edition against Ms. Williams' allegations that The Third Edition's security personnel had failed to halt the alcohol-induced attack.

III. THE THIRD EDITION'S OBLIGATION TO INDEMNIFY INTERSTATE

■ Interstate seeks indemnification from The Third Edition for all costs incurred in defending against Ms. Williams' suit, including $99,412 in attorneys' fees and the $275,000 paid in settlement of her claim. Interstate claims it is entitled to indemnification because it has satisfied the procedures set forth in *Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F.Supp. 283, 288 (D.D.C.1980), which it asserts an

insurer must follow in order to contest its obligation to pay a settlement reached between an insured and a third party. In the alternative, Interstate claims that it is due compensation for the damages it incurred as a consequence of the allegedly fraudulent settlement between Ms. Williams and The Third Edition.

The procedures described in *Central Armature* are not relevant to this case. Unlike the insurance company in *Central Armature*, which was defending a claim for indemnification and damages by its insured, *see id.* at 285, Interstate was being sued by the third party, Ms. Williams, who was seeking to collect the amount for which she had settled her claim against The Third Edition. Because her claim was entirely derivative, Interstate had no greater obligation to pay Ms. Williams than it had to indemnify The Third Edition. By the same token, because Ms. Williams stood in the place of The Third Edition, Interstate's settlement of her derivative claim was tantamount to a settlement with The Third Edition. By settling the claim, Interstate extinguished its right to challenge its contractual obligation to cover the settlement between Ms. Williams and The Third Edition.

■■■■■■ Interstate also advances two tort theories of recovery, neither of which is availing. According to the first theory, Interstate was entitled to indemnification because, in failing to disclose to the district court that the settlement underlying its $1 million consent judgment was entered collusively, The Third Edition had committed a fraud upon the court. The problem with that theory is that, even assuming that the settlement was exorbitant and collusive, Interstate fails to allege a tort. Upon a showing by an insurer that the settlement for which a plaintiff is seeking to hold it liable is exorbitant and was entered collusively, a court may vacate the judgment into which the settlement was incorporated. *See, e.g., Spence–Parker v. Maryland Ins. Group*, 937 F.Supp. 551, 562–63 (E.D. Va.1996) (holding that failure to disclose collusive nature of settlement negotiations amounted to constructive fraud on court and that consent judgment must therefore be set aside). Such an action is prem-

ised upon the insurer's proving a fraud upon the court. Although the act complained of is styled a "fraud," the remedy lies within the court's equitable discretion, *see, e.g., Carlin v. McKean*, 823 F.2d 620, 624–25 (D.C.Cir. 1987) (stating that "the 'historic power of equity' . . . [is a] narrow[ ] power to revise a judgment that was obtained by perpetrating a fraud upon the court"); *cf. Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254, 1264 (D.C.1986) ("The claim of 'fraud on the court' is similar in effect to the equitable defense of unclean hands."). Because such an action does not sound in tort, the only remedy available to an insurer is vacatur of the consent judgment. In this case, Interstate's liquidation of that judgment through its settlement with Ms. Williams moots its present attack upon it.

■■■■ Interstate's second theory is that The Third Edition's misrepresentations to the trial court and its exorbitant and collusive settlement with Ms. Williams tortiously embroiled Interstate in litigation to which it otherwise would not have been a party. In making its claim for indemnification, Interstate relies on the following dicta from *Brem v. United States Fidelity & Guaranty Co.*, 206 A.2d 404 (D.C.1965):

> [A] plaintiff [may] seek[ ] in a separate action to recover attorney['s] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, . . . if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person. . . .

*Id.* at 407. Assuming that this rule is recognized in the District of Columbia and that it is applicable here, it would permit Interstate to recover its attorney's fees but not the $275,000 it paid Ms. Williams. Although The Third Edition's settlement agreement with Ms. Williams and the resulting consent judgment caused Interstate to retain a lawyer to defend against Ms. Williams' suit, they did not require Interstate to settle a derivative claim that it insists was worthless.

But regardless of the amount that Interstate reasonably could anticipate securing were it to prevail on this theory, its claim suffers a more fundamental inadequacy. In-

terstate alleges that The Third Edition committed two predicate torts which, considered alone or in conjunction, wrongfully entangled it in litigation: The Third Edition entered into a collusive and exorbitant settlement, and it fraudulently failed to disclose the existence of the insurance contract's exclusion clauses to Ms. Williams. Assuming, for the purposes of this analysis, that The Third Edition's conduct was in fact tortious, Interstate is entitled to a remedy only if The Third Edition's wrongful acts caused Interstate to become a party to litigation in which it otherwise would not have been involved. *See Nepera Chem., Inc. v. Sea–Land Serv., Inc.,* 794 F.2d 688, 697 (D.C.Cir.1986) (defendant's conduct tortious only if plaintiff's being haled into court "flow[ed] from the defendant's malfeasance"). Interstate could have anticipated defending this action either because it was actually bound to indemnify The Third Edition or because it was contractually obligated to defend it. *Cf. Potomac Residence Club v. Western World Ins. Co.,* —— A.2d ——, 1997 WL 746362 at *4–5 (D.C. Dec. 4, 1997) (holding that insured that pre-vails in suit for reimbursement of legal expenses incurred in defending claim for which insurer had duty to defend is entitled to compensation for legal fees expended in suit against insurer). Because Interstate was required to defend The Third Edition, *see supra* Part II, Interstate's involvement in the litigation did not "aris[e] out of the tortious act of the defendant." *Brem,* 206 A.2d at 407.

## IV. CONCLUSION

For the foregoing reasons, the district court judgment is affirmed as to Interstate's claim for indemnification and reversed as to The Third Edition's counterclaim.

*So ordered.*