**HERMITAGE INSURANCE COMPANY, Plaintiff,**

v.

**Richard DAHMS, et al., Defendants.**

**No. 93 C 1700.**

United States District Court, N.D. Illinois, E.D.

Jan. 10, 1994.

Stephen T. Mikus and Janice Lynn Triptow, Chicago, IL, for plaintiff.

David J. Santori, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Hermitage Insurance Company ("Hermitage") has brought this action against Richard Dahms ("Dahms"), R.C.D. Enterprises, Inc. ("R.C.D.") and other defendants under the Declaratory Judgment Act, 28 U.S.C. § 2201. Hermitage seeks a judicial ruling that it has no obligation under a policy issued to R.C.D. (the "Policy") either to defend or to indemnify R.C.D. and Dahms in connection with a dramshop action brought against them and David Rybak ("Rybak") by John Medlin ("Medlin") in the Circuit Court of Cook County (*Medlin v. Dahms*, No. 92 L 8152). Hermitage on the one hand and R.C.D. and Dahms on the other[1] have moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, Hermitage's motion is granted.

1. Dahms is an officer-shareholder of R.C.D. (Answer ¶ 4). Although the Policy was issued to R.C.D. as the "named insured," Dahms is also included (when acting within the scope of his duties) as an "insured" under the definition contained in Paragraph II(c) of the Policy's provisions that deal with bodily injury and property damage liability coverage. Hence Hermitage's obligations or lack of obligations as to both defense and indemnification are the same as to both R.C.D. and Dahms.

*Summary Judgment Principles*

Rule 56 principles impose on any movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Where as here cross-motions are involved, that principle thus demands a dual perspective—one that this Court has often described as Janus-like—that sometimes involves the denial of both motions.

This District Court's General Rules ("GR") 12(m) and 12(n) require the submission of factual statements respectively in support of and in opposition to Rule 56 motions. R.C.D. and Dahms have filed a GR 12(m) statement (the "12(m) Statement"), while Hermitage has neither contested that statement as allowed under GR 12(n) nor filed its own GR 12(m) statement.[2] Consequently the material facts set out in the 12(m) Statement that are supported by the factual record are deemed admitted (*Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993)). Because the outcome here depends upon:

1. the causes of Medlin's injuries as alleged in his Circuit Court Complaint and

2. the precise coverage to which R.C.D. and Dahms are entitled under the Policy,

this Court relies on those documents (both of which are exhibits to Hermitage's Complaint) to assess the accuracy of the 12(m) Statement (see, e.g., *Scherer v. Rockwell Int'l Corp.,* 766 F.Supp. 593, 595 n. 1 (N.D.Ill. 1991)).

*Facts*

*Medlin's Lawsuit*

R.C.D. d/b/a Ricky D's is a dramshop (a bar) located at 7900 Ogden Avenue, Ogden, Illinois. As already stated, Dahms is an officer-shareholder of R.C.D. Because the nature of Medlin's claims provides the key to the Policy's coverage or noncoverage, Medlin's substantive allegations in his Circuit Court action are reproduced at length here.

[COUNT I[3]]

2. That prior to 2:00 a.m. on July 21, 1991, said Defendants [Dahms and R.C.D. d/b/a Ricky D's] sold liquor to sever [sic] unknown male patrons of their dram shop, causing the intoxications [sic] of said unknown persons.

3. That as a result of the intoxication of said unknown persons, said persons assaulted the Plaintiff [Medlin] both inside and outside of Defendants's [sic] dram shop, and he was forced into the path of an automobile as a result of which he was struck by said automobile, causing him to suffer: [injuries].

\* \* \* \* \* \*

COUNT II (Re: RICKY D's)

1–3. Plaintiff Realleges [sic] paragraphs 1, 2, and 3 of Count I.

4. That Defendant owed a duty to its customers, including the Plaintiff, to provide reasonable or adequate security to provide for their safety.

5. That the Defendants violated this duty to the Plaintiff by one or more of the following acts or omissions:

a. Failed to maintain order in their place of business;

b. Continued to sell intoxicating beverages to persons who were argumentative and violent;

c. Failed to take any action to provide for the protection of the Plaintiff when they had reasonable notice that he was in danger of being injured by 3rd persons.

---

**2.** That is unsurprising: the R.C.D.–Dahms 12(m) Statement has largely repeated the factual assertions made in Hermitage's Complaint. And that is equally unsurprising, for the R.C.D.–Dahms Answer essentially admitted every substantive allegation in the Complaint.

**3.** Although Medlin has not expressly labeled the first section of his Complaint as "Count I," that appears to have been an oversight.

d. Forced the Plaintiff to have [sic; obviously should read "leave"] their place of business, knowing that if he was on the street he would be assaulted by 3rd persons.

6. That as a result of one or more of said acts or omissions the Plaintiff was attacked by 3rd persons causing him to suffer: [injuries].

\* \* \* \* \* \*

COUNT III (Re: David Ryback [sic])

1. That on July 21, 1991, at approximately 2:00 a.m., the Defendant, DAVID RYBACK, owned and operated a motor vehicle in a West direction on Ogden Avenue, near Amelia Avenue, in the City of Lyons, County of Cook, State of Illinois.

2. That the Defendant had a duty to the Plaintiff to use reasonable care for the safety of pedestrians, including the Plaintiff[,] who were on or about Ogden Avenue at said location.

3. That the plaintiff was among a group of pepole [sic] who were on and about said street.

4. That in violation of his duty to the Plaintiff, the Defendant was guilty of one or more of the following acts or omissions:

a. Failed to exercise reasonable caution after observing a large crowd of people in the roadway;

b. Drove his car too fast for conditions;

c. Failed to stop his car to avoid striking a pedestrian;

d. Negligently drove his car through a large group of people who had gathered in the street knowing that a pedestrian in said group might run or be pushed in front of or into his vehicle;

5. That as a result of one or more of the said negligent acts or omissions, the Defendant's vehicle struck the Plaintiff causing him to suffer: [injuries].

*Policy Provisions*

Hermitage issued the Policy (including provisions for liability coverage) to R.C.D. for the period from July 15, 1991 to July 15, 1992. Its Special Multi–Peril Liability Insurance section appears on Heritage's standard form MP 00 93[4] and includes coverage for **bodily injury** (Policy 93 at 1):

> caused by an **occurrence**, and arising out of the ownership, maintenance or use of the **insured premises** and all operations necessary or incidental to the business of the **named insured** conducted at or from the **insured premises**.

**Occurrence** is defined as (Policy 90 at 6):

> an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**.

**Insured premises** are defined as (Policy 93 at 3):

> all premises owned by or rented to the **named insured** with respect to which the **named insured** is afforded coverage for **bodily injury** liability under this policy, and includes the ways immediately adjoining on land.

Another provision of the Policy, not part of the printed provisions dealing with liability coverage, is at the core of the parties' dispute. That is the Policy's "ASSULT [sic] & BATTERY EXCLUSION ENDORSEMENT":

> Notwithstanding anything contained herein to the contrary, it is understood and agreed in consideration of the premium charged, bodily injury or death alleged to have been caused by ASSULT [sic] AND/OR BATTERY shall not be deemed an accident or occurrence under the Policy and no coverage shall apply hereunder.[5]

**4.** Citations to the Policy will take the form "Policy 93 at __" (omitting the "MP 00" designation, and reflecting the page number in that section of the policy) or "Policy 90 at __" (referring to any part of "MP 00 90," which sets out the "Conditions and Definitions" applicable to the MP 00 93 section, and again reflecting the page number within those Conditions and Definitions). All terms in boldface are defined in the Policy.

**5.** [Footnote by this Court] Technically, of course, only a battery involves a physical touching, while an assault does not. But it *is* possible for an assault to "cause" a bodily injury even though the assault itself does not inflict such

### Substantive Legal Principles

■ This Court's June 18, 1993 memorandum opinion and order has already upheld diversity jurisdiction here, given (1) the complete diversity of citizenship between the opposing parties and (2) the potential for a jury verdict of more than $50,000 in Medlin's underlying lawsuit. Because federal jurisdiction does sound in diversity and the parties have argued Illinois law in their submissions, the proper course for this Court is to apply that substantive law (*Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991)).

■ Under Illinois law the interpretation of an insurance policy is a question of law for the court and is therefore appropriate grist for the summary judgment mill (*Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993)). To that end, policy provisions are to be construed in favor of the insured and against the insurer where they are ambiguous—that is, are "subject to more than one reasonable interpretation" (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 74, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991)). That contra proferentem principle is applied with added rigor in determining the meaning of exclusionary provisions (*Goldblatt Bros., Inc. v. Home Indem. Co.*, 773 F.2d 121, 125 (7th Cir.1985), quoting *Dawe's Lab. N.V. v. Commercial Ins. Co.*, 19 Ill.App.3d 1039, 1049, 313 N.E.2d 218, 225 (1st Dist.1974)), which will be enforced only "where the terms are clear, definite, and explicit" (*Economy Fire & Casualty Co. v. Kubik*, 142 Ill.App.3d 906, 908, 97 Ill.Dec. 68, 71, 492 N.E.2d 504, 507 (1st Dist.1986)). On the other hand, no policy language should be rendered meaningless surplusage—instead all the language must be interpreted in accordance with its plain and ordinary meaning (*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 122, 180 Ill.Dec. 691, 699, 706, 607 N.E.2d 1204, 1212, 1219 (1992)).

■ As an overlay to that general approach to policy construction, Illinois law also teaches that an insurer's obligation to defend its insured is separate from and broader than its contractual obligation to indemnify (*Conway v. Country Casualty Ins. Co.*, 92 Ill.2d 388, 394, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982)). There is a duty to defend if the complaint in the underlying action alleges facts that are at least "potentially within" the coverage provided by the insurance policy (*Thornton v. Paul*, 74 Ill.2d 132, 144, 23 Ill.Dec. 541, 545, 384 N.E.2d 335, 339 (1978)). For that purpose it is enough if any one of a complaint's several grounds for recovery comes within the ambit of the policy coverage (*Maryland v. Casualty Co. v. Peppers*, 64 Ill.2d 187, 194, 355 N.E.2d 24, 28 (1976)). By contrast, the duty to indemnify can be determined only after there has been a finding of liability in the underlying suit against the insured and after it has been shown that the injury "*actually* fall[s] within coverage" (*Crum & Forster*, 156 Ill.2d at 398, 189 Ill. Dec. at 764, 620 N.E.2d at 1081 (emphasis in original); *Outboard Marine*, 154 Ill.2d at 127–28, 180 Ill.Dec. at 708, 607 N.E.2d at 1221).

All that being so, summary judgment at this threshold stage could pose some special problems. If Medlin's underlying Complaint does not even potentially allege facts that fall within the Policy's coverage, summary judgment must be granted in Hermitage's favor on both issues (defense and indemnification). If however Medlin's allegations *are* potentially within such coverage, R.C.D. and Dahms are entitled to summary judgment as to Hermitage's duty to defend Medlin. But in that event the existence or nonexistence of a duty to indemnify cannot be ripe for decision (by summary judgment or otherwise) because Medlin's lawsuit is still unresolved (see, e.g., this Court's opinion in *Maryland Ins. Co. v. Attorneys' Liability Assurance Soc'y, Ltd.*, 748 F.Supp. 627, 629–32 (N.D.Ill.1990)).

### Policy Coverage or Noncoverage?

Despite the parties' almost singular focus on the assault and battery exclusion, it is first appropriate to look at the threshold

---

injury. This opinion will attempt to employ the proper usage of the two terms, although Medlin's Complaint has muddied the waters by referring to "assault" when "battery" is meant in the technical sense.

question whether Medlin's alleged injuries fall within the Policy coverage (*Ludwig Candy Co. v. Iowa Nat'l Mut. Ins. Co.*, 78 Ill. App.3d 306, 311, 33 Ill.Dec. 605, 608–09, 396 N.E.2d 1329, 1332–33 (1st Dist.1979)). Analysis of both of those issues of course hinges on causation: to what sorts of causes of injuries does the Policy extend coverage, and which of those sorts are excluded by the assault and battery provision?

Medlin's Count I ¶ 3 alleges two direct or immediate causes of his injuries. First it points (as does Count II) to those sustained in the assault and battery by the unknown patrons of Ricky D's, and next it addresses (as does Count III) the injuries suffered when Medlin was struck by Rybak's car. Each set of injuries is alleged to flow from an R.C.D.–Dahms–related cause.[6] As for the assault and battery injuries, they are alleged to be attributable to Ricky D's sale of liquor to intoxicated patrons (Count I ¶ 2 and Count II ¶ 5). Injuries from the car are alleged to depend on a two-step sequence: the sale of liquor to intoxicated patrons leading to the assault, and that in turn forcing Medlin into the path of the car.

*Basic Policy Coverage*

 For **bodily injuries** to be covered, the Policy imposes a twofold requirement—they · must be:

1. "caused by an **occurrence**"

2. "arising out of the ownership, maintenance or use of the **insured premises** and all operations necessary or incidental to the business of the **named insured** conducted at or from the **insured premises**."

Those provisions will be addressed in turn.

As already stated, **occurrences** are defined as "accident[s] ... neither expected nor intended from the standpoint of the **insured**." Nothing in Medlin's Complaint suggests that

R.C.D. or Dahms intended or expected either the assault and battery or Medlin's being struck by Ryback's car. Hence the events at issue are certainly covered **occurrences.**

As for "arising out of," that phrase in an insurance policy is said to be "both broad and vague, and [it] must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language" (*Maryland Casualty Co. v. Chicago & N.W. Transp. Co.*, 126 Ill.App.3d 150, 154, 81 Ill.Dec. 289, 292, 466 N.E.2d 1091, 1094 (1st Dist.1984)). Thus the relevant question in that respect is whether there is a "but for" relationship between the operation of Ricky D's business operation on July 21, 1991 and each of the two discrete immediate causes of Medlin's injuries.

Whether or not intoxication is an intended result of running a bar (given the existence of statutory dramshop liability, every owner would deny that vigorously), it cannot be gainsaid that the intoxication of patrons is a consequence that clearly "aris[es] out of" both the ownership and use of a bar and is incidental (though not wholly necessary) to its business operation. And of course it is also an occurrence incidental to the business of running a bar that alcohol will be sold to argumentative and violent persons.

Count II ¶ 5(d) goes on to allege that R.C.D. and Dahms "forced [him] to have [7] their place of business." That in turn subjected him to an assault on the street—a risk *known* to R.C.D. and Dahms (*id.*). Again the "but for" sense of the "arises out of" phrase is clearly satisfied.

In sum, had the unknown patrons not become intoxicated, they would not have assaulted Medlin and caused him to be in the path of Rybak's car. Similarly, had Medlin not been forced to leave Ricky D's, he would

6. Illinois Pattern Jury Instruction Civil (IPI) 15.01 (3d Ed.1991) defines "proximate cause": When I use the expression "proximate cause," I mean any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.

See, e.g., *United States Fidelity and Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 152 Ill.App.3d 46, 48, 105 Ill.Dec. 254, 256, 504 N.E.2d 123, 125 (1st Dist.1987).

7. [Footnote by this Court] As stated earlier, that is an obvious typographical error. It will be read here instead as the clearly intended word "leave."

not have been assaulted on the street—an assault that in turn caused him to be struck by Rybak's car. In each instance the necessary "but for" relationship has been alleged (which is enough to require defense of the claim under the Policy without reference to the exclusion). It is time then to turn to the assault and battery exclusion to see whether it takes Medlin's claims out of the Policy's coverage.

*Assault and Battery Exclusion*

■ As already reflected in the full-text quotation of that exclusion, it denies coverage for "bodily injury ... *caused by*" assault or battery or both (emphasis supplied). While "caused by" is not among the terms expressly defined in the Policy, the ensuing text shows that the only reasonable reading of that term in the context in which it is used and in light of the entire Policy (see *Crum & Forster,* 156 Ill.2d at 391, 189 Ill.Dec. at 761, 620 N.E.2d at 1078 (policy must be construed "as a whole")) is one that denotes proximate cause. Thus the exclusion extends to all bodily injuries that are proximately caused by assault or battery or both.

■ As an initial matter the exclusion is needed to deal only with assaults and batteries committed by parties other than the **insured,** even though facially it is broad enough to encompass such acts committed by anyone, including the **insured.**[8] After all, any assault or battery committed by R.C.D. or Dahms is specifically excluded from the definition of occurrence because it is an intentional act on its or his part. Hence an assault or battery by R.C.D. or Dahms is not covered by the Policy wholly without reference to the exclusionary provision (*Thornton v. Illinois Founders Ins. Co.,* 84 Ill.2d 365, 372–73, 49 Ill.Dec. 724, 728, 418 N.E.2d 744, 748 (1981)). That being true, the only as-

saults and batteries that could potentially fall within the Policy (absent an exclusion) are those proximately caused by the negligence of R.C.D. or Dahms or both.

That necessary line of analysis compels a corresponding reading of the exclusion, under which that provision takes out of the Policy any coverage for negligent acts by R.C.D. or Dahms that proximately cause an assault or battery or both. That can readily be seen by considering the only conceivable (though ultimately untenable) alternatives to giving the term "caused by" the same scope in the assault-and-battery exclusionary provision as the scope of potential Policy coverage for assaults and batteries if the exclusion were not there:

1. Assume instead that the exclusion extended to bodily injury stemming from assaults and batteries that had to be not only proximately but also *immediately* caused by the negligence of R.C.D. or Dahms.

2. Or assume instead that the exclusion extended to bodily injury stemming from assaults and batteries that, although proximately caused by the negligence of R.C.D. or Dahms, were *not* immediately caused by such negligence.

Those possibilities do exhaust the universe of possible alternative readings, but neither is at all reasonable—and reasonableness is the precondition to qualifying for contra proferentem treatment. If the first alternative were to apply, the consequence would be that the insurer would be providing coverage for matters having only an attenuated relationship to the insured, while at the same time denying insurance coverage for matters immediately caused by the insured's negligence—surely a bizarre pattern of coverage.

---

8. R.C.D. and Dahms Mem. 8–9 argues that the exclusion is ambiguous as to whose assaults and batteries it refers to. But that contention ignores the clear wording of the exclusion: "bodily injury ... caused by ASSULT [sic] AND/OR BATTERY shall not be deemed an accident or occurrence under the Policy and no coverage shall apply hereunder." By its terms that provision is not limited to assaults and batteries by certain classes of persons—its plain and ordinary meaning specifies assaults and batteries by anyone. Ambiguities are not to be judicially created

where none exists (*United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 5, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981)). Moreover, if the exclusion were to be read as covering only such acts by the **insured,** it would be totally superfluous for the reason next stated in the text—and any such reading that would render the provision mere surplusage is "contrary to ... Illinois rules of construction" (*Outboard Marine Corp.,* 154 Ill.2d at 122, 180 Ill.Dec. at 706, 607 N.E.2d at 1219).

And in order for the second alternative to apply, the word "cause" would have to be given an impermissibly strained meaning—one totally at odds with any common sense usage. Inescapably, then, the only reasonable construction of the phrase "caused by" is that it means causation in its proximate sense.

In light of that clear meaning of the assault and battery exclusion, it is plain that Hermitage has no duty to defend either aspect of Medlin's Complaint that targets R.C.D. and Dahms. Count II and the corresponding portion of Count I ¶ 3 plainly allege injuries that were directly caused by the assault and battery by the unknown patrons both inside and outside of Ricky D's, and that were assertedly proximately caused by the conduct of R.C.D. and Dahms (else the latter could not be liable to Medlin at all). Those allegations come squarely within the assault and battery exclusion, though the conduct ascribed to R.C.D. and Dahms was not itself an assault and battery and was only negligent rather than intentional (*United Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 213–15 (7th Cir.1991)).[9] And as for the other portion of Count I ¶ 3, it attempts to recover for Medlin's injuries caused by his being struck by Rybak's car—something that was assertedly caused by the assault and battery and that was also (as a necessary component of R.C.D.'s and Dahms' claimed liability) assertedly proximately caused by *their* negligence. That claim too falls squarely within the exclusion, also being a "bodily injury ... caused by" assault or battery or both.

In sum, as a matter of law Medlin's Complaint does not trigger Hermitage's obligation to defend R.C.D. or Dahms. And because there is thus no duty to defend them, there can be no duty to indemnify them (*Crum & Forster*, 156 Ill.2d at 398, 189 Ill.Dec. at 764, 620 N.E.2d at 1081).

*Conclusion*

There is no genuine issue of material fact, and Hermitage is entitled to a judgment as a matter of law. This Court declares that Hermitage has no obligation under the Policy either to defend or to indemnify R.C.D. or Dahms or any other person or entity against Medlin's Circuit Court of Cook County action. And of course the R.C.D.–Dahms cross-motion for summary judgment is denied.

---

**9.** R.C.D. and Dahms seek to· distinguish *United Nat'l* because its policy exclusion applied to "assault and/or battery ·... caused by ... [an] *omission* [ ] by the Insured" (emphasis supplied). But that is a distinction without a difference. Both the Hermitage exclusion and that in *United Nat'l* remove from coverage any bodily injury stemming from the insured's negligent conduct that gives rise to a third party's assault and battery. And once the two exclusion clauses are thus seen to have a comparable scope, the several other cases that involve policies with exclusionary clauses like that in *United Nat'l* likewise support the conclusion reached here: see *Essex Ins. Co. v. Yi*, 795 F.Supp. 319, 322–24 (N.D.Cal.1992) and the group of cases cited there.