**CAPITOL INDEMNITY CORPORATION, a Wisconsin Corporation, Plaintiff,**

v.

**Robert BLAZER d/b/a Bird Off Paradise Lounge;  and Tina Petruccio, Defendants.**

**No.  CV–S–9801013PMP(RJJ).**

United States District Court,
D. Nevada.

April 27, 1999.

David Barron, William H. Pruitt, Lefebvre, Barron & Vivone, Las Vegas, NV, for plaintiff.

Robert K. Sparks, Law Offices of Robert K. Sparks, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Presently before the Court is Plaintiff Capitol Indemnity Corporation's ("Capitol Indemnity") Motion for Summary Judgment (# 8) filed December 2, 1998. Defendant Robert Blazer d/b/a Bird Off Paradise Lounge ("Blazer") filed an Opposition (# 11) on January 11, 1999. Capitol Indemnity filed a Reply (# 14) on February 8, 1999.

### I. Introduction

This is a Summary Judgment Motion to determine an insurer's obligation to indemnify or defend the insured against suit pursuant to the terms and provisions of an insurance policy. The insurer also seeks to recover all costs incurred in the investigation and defense of the underlying suit. Adjudication of the summary judgment motion requires the Court to interpret the insurance policy and decide the following two questions: (1) whether the incidents giving rise to the insured's liability constitute an "occurrence" under the policy, and (2) if so, whether the exclusion provisions of the policy nevertheless preclude coverage in this case.

The Court finds that while this case involves an "occurrence," as defined by the insurance policy, the exclusion provisions preclude coverage. Therefore, the insurer has no duty to defend or indemnify the insured with respect to the underlying suit. Nonetheless, the insurer is not entitled to reimbursement of its expenses in this case due to its failure to provide evidence of any understanding providing for this right.

### II. Factual Background

On January 23, 1997, Peter Banach ("Banach"), Buddy Simpson ("Simpson") and David Lawrence Shaw ("Shaw"), were patrons of a tavern known as the Bird Off Paradise Lounge ("Lounge"), owned and operated by Robert A. Blazer, Jr. ("Blazer"). While at the Lounge, Banach and Simpson committed assault and battery upon Shaw. As a result, Shaw allegedly suffered serious bodily injuries, including a total loss of vision in his left eye. Banach and Simpson were subsequently found guilty of criminal assault and battery. (J.'s of Conviction, Dist. Ct., Clark County, Nevada, Case Nos. C141543, C141682.)

Shaw filed a civil complaint against Banach, Simpson, Blazer, the Lounge, and the bartender working the night of the assault, Tina Petruccio ("Petruccio"). The Complaint states five claims for relief, sounding in both intentional tort and negligence. Shaw seeks medical and related expenses, general and punitive damages, costs and attorneys fees.

Blazer maintained a commercial general liability policy with Capitol Indemnity Corporation ("Capitol Indemnity") which was effective at the time of the assault and battery. The policy provides coverage for bodily injury only if it is caused by an "occurrence." The policy, in turn, defines an "occurrence" as an "accident." In addition, the policy contains various exclusionary provisions which bar coverage in particular instances, even where the event may qualify as an "occurrence."

First, the Assault and Battery Exclusion precludes coverage for " 'bodily injury' ... arising out of *assault, battery* or *assault and battery*." (Pl.'s Mot. for Summ.J., Ex. D at C0084.) Second, the Liquor Liability Exclusion precludes coverage for " 'bodily injury' ... for which any insured may be held liable by reason of causing or contributing to the intoxication of any person ... or any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages." (*Id.* at C0066.) Third, the insurance does not apply to " 'bodily injury' ... expected or intended

from the standpoint of the insured." (*Id.* at C0049.)

Pursuant to this insurance policy, Capitol Indemnity filed a Complaint for Declaratory Relief (# 1) on July 13, 1998, alleging that it had no duty to defend or indemnify Blazer, Petruccio, or the Lounge and seeking reimbursement for all expenses incurred in the investigation or defense of Shaw's claims. After Blazer filed his Answer (# 4), Capitol Indemnity moved for summary judgment of its Complaint.

## III. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1300–01 (9th Cir.1982). The substantive law defines which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.*

Moreover, all facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *See Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982).

Accordingly, the court must determine whether a reasonable jury could return a verdict for the respondent. *See Anderson,* 477 U.S. at 248–250, 106 S.Ct. 2505. If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 847 (9th Cir.1996), *cert. denied,* 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. *See* Fed.R.Civ.P. 56. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *See Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1).

## IV. Discussion

Interpretation of unambiguous language in a contract is a pure question of

law and appropriate for disposition by summary adjudication. *See Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1341 (9th Cir.1989). Whether ambiguity exists is also a question of law for the court. *See United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1343 (9th Cir.1981).

To determine Capitol Indemnity's entitlement to summary judgment, this Court must answer the following questions about the policy provisions: (1) Does an intentional assault and battery constitute an insurable "occurrence" as defined by the policy? (2) If so, do the assault and battery and liquor liability exclusion provisions preclude coverage for Blazer's liability? (3) If coverage is precluded, is Capitol Indemnity entitled to reimbursement of its expenses incurred in the investigation and defense of Shaw's claims? [1]

### A. Applicable Law

A federal court, sitting in diversity, must apply state law in construing an insurance policy. *See Fortis Benefits Ins. Co. v. Johnson*, 966 F.Supp. 987, 989 (D.Nev. 1997). Accordingly, this Court must construe the policy as a Nevada state court would if presented with the same question. *See id.* at 990. In the absence of Nevada Supreme Court precedent, "federal courts exercising diversity jurisdiction may look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority' to determine how the state court would resolve the issue." *Santana v. Zilog, Inc.*, 95 F.3d 780, 783 (9th Cir.1996) (quoting *Burns v. International Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991)).

■ An insurance company's duty to defend and/or indemnify its insured arises from the provisions of the insurance policy.

*See Rockwood Ins. Co. v. Federated Capital Corp.*, 694 F.Supp. 772, 776 (D.Nev. 1988). "The insurer must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy." *Id.*

■ "An insurance policy is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 109 Nev. 42, 846 P.2d 303, 304 (1993). Ambiguous terms in an insurance policy will be construed in favor of the insured and against the insurer. *See Harvey's Wagon Wheel, Inc. v. MacSween*, 96 Nev. 215, 606 P.2d 1095, 1098 (1980).

■ On the other hand, when contract language is clear and unambiguous, a court cannot, under the guise of interpretation, distort the plain meaning of the contract. *See Watson v. Watson*, 95 Nev. 495, 596 P.2d 507, 508 (1979). Accordingly, Nevada courts will enforce unambiguous policy provisions that exclude coverage. *See Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 707 P.2d 1149, 1150 (1985).

■ Any attempt to restrict insurance coverage must be done clearly and explicitly. *See Sullivan v. Dairyland Ins. Co.*, 98 Nev. 364, 649 P.2d 1357, 1358 (1982). In particular, an insurer, wishing to restrict the coverage of a policy, should employ language which clearly and distinctly communicates to the insured the nature of the limitation. *See National Union Fire Ins. v. Reno's Exec. Air*, 100 Nev. 360, 682 P.2d 1380, 1382 (1984).

### B. Intentional Harms as a Covered Occurrence

■ "The analysis of [a policy] exclusion begins with determining whether the act in question is covered by the policy, that is, whether it constituted an accident or oc-

---

1. Blazer argues that summary adjudication is premature because discovery is still pending in the underlying action. However, since further discovery will not aid the Court's task of policy interpretation, it cannot reveal issues material to this summary adjudication. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1297 (9th Cir.1982) (defining a material issue of fact as one that affects the outcome of the litigation).

currence as required under the policy; absent coverage, the applicability of [a policy] exclusion is irrelevant." 44 A.L.R.5th 91, 110 (1996) (citing generally *Britamco Underwriters v. Stokes,* 881 F.Supp. 196 (E.D.Pa.1995)); *see also Hermitage Ins. Co. v. Dahms,* 842 F.Supp. 319, 323–24 (N.D.Ill.1994). In the present case, the policy only provides coverage for bodily injury caused by an "occurrence," which is defined as an "accident." (Pl.'s Mot. for Summ. J., Ex. D at C0049, C0060.) Thus, the initial question before this Court is whether an intentional tort, like assault and battery, constitutes an "accident" under the policy.

The policy does not define "accident." Nor does the Assault and Battery Exclusion specifically assert that assault and battery is not an accident. The Court is aware of only one Nevada decision, *Catania v. State Farm Life Ins. Co., Inc.,* 95 Nev. 532, 598 P.2d 631 (1979), which divines a layperson's plain and ordinary interpretation of the term "accidental" in the context of insurance policies. In *Catania,* the court discussed whether the insured's death was accidental for the purposes of an accidental death insurance policy, where the insured died from the effects of a self-inflicted heroin injection. In construing the term "accidental," as it was understood by the average man, the court stated that "[o]ne paying the premium for a policy which insures against 'death by accidental means' intends to ... insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment." *Id.* at 632 (quoting *Knight v. Metropolitan Life Ins. Co.,* 103 Ariz. 100, 437 P.2d 416, 420 (1968)). In concluding that the insured's death was accidental, the court held that "where an insured dies as the result of an intentional or expected act or event, but did not intend or expect death to result, the death is 'accidental' within the contemplation of that term, as utilized in a policy such as the one before us." *Id.* at 633.

Thus, it is important to note that the *Catania* court interpreted the term "acci-

dental" from the perspective of the insured as to whether the result of his actions was accidental, rather than looking to the intentional nature of the means. *See id.* at 632–33. Since the insured did not intend to die, his death was accidental in the context of his insurance policy, even though his death was proximately caused by an intentional act. *See id.* at 633; *see also Nationwide Mut. Fire Ins. Co. v. Pipher,* 140 F.3d 222 (3d Cir.1998) (finding third party murder of an apartment tenant to be an accidental "occurrence" because landlord-insured neither expected nor intended tenant's injuries or death); *Allegany Co-op. Ins. Co. v. Kohorst,* 254 A.D.2d 744, 678 N.Y.S.2d 424, 425 (1998) ("[I]t must be determined from the point of view of the insured whether the loss was unexpected, unusual, and unforeseen."); *Merced Mut. Ins. Co. v. Mendez,* 213 Cal. App.3d 41, 261 Cal.Rptr. 273, 279 (1989) ("[A]n accident exists when any aspect in the causal series of events leading to the injury or the damage was unintended by the insured and a matter of fortuity.").

Here, there is no reason to believe that the term "accident" would take on a different meaning, to the ordinary person, merely because of its transference to the context of a commercial liability policy. Capitol Indemnity's reliance on non-Nevada authorities such as *Capitol Indem. Corp. v. L. Carter Post 4472 Veterans of Foreign Wars, Inc.,* 225 Ga.App. 354, 484 S.E.2d 52, 54 (1997) and *Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1210–11 (1994) is misplaced, insofar as these cases improperly focus on whether the tortfeasor intended to commit the injury-causing act.

In reaching this conclusion, the Court finds it unnecessary to resolve the parties' dispute over the role and effect of pleading negligence in an insurance suit. Blazer argues that the assertion of negligence claims is sufficient on its own to require an insurance company to defend an action brought against its insured. *See Nationwide,* 140 F.3d at 225. Although the *Nationwide* court may have

found the pleading of negligence important in distinguishing the case before them from existing Pennsylvania precedent, this Court is not convinced that Nevada would adopt such reasoning. In determining whether the insured's death was accidental for purposes of the insurance policy, the Nevada Supreme Court focused solely on the insured's intentions and/or expectations with respect to the resulting harm. *Catania,* 598 P.2d at 633. The court did not discuss the effect of the pleadings at any level.

Therefore, the Court must examine whether Blazer, the insured in this case, expected or intended Shaw's resulting bodily injuries. In this regard, Capitol Indemnity has submitted no evidence indicative of any intent or expectation of injury on Blazer's part. Barring the submission of such evidence, this Court can not, at this time, summarily adjudicate the matter in Capitol Indemnity's favor. *See Catania,* 598 P.2d at 633 (holding the issue of whether insured's death was expected or intended, and therefore not accidental, to be a question of fact).

## C. Exclusion Provisions

Nonetheless, even if Shaw's injuries were accidental, and therefore an "occurrence" under the policy, they may be uninsurable under the exclusionary provisions. *See Hermitage Ins. Co. v. Dahms,* 842 F.Supp. 319, 324, 326 (N.D.Ill.1994). In order for the Court to determine whether the exclusionary provisions preclude coverage in this case, the Court must decide if the provisions clearly and unambiguously bar coverage for Shaw's injuries, even where his injuries were inflicted by third parties.

### 1. Assault and Battery Exclusion

Capitol Indemnity's Assault and Battery Exclusion provides: "This insurance does

not apply to bodily injury, property damage, or personal injury arising out of *assault, battery,* or *assault and battery.*" (Pl.'s Mot. for Summ.J., Ex. D at C0084.) The policy defines "assault" as "a willful attempt to offer with force or violence to harm or hurt a person without the actual doing of the harm or hurt." *Id.* "Battery" is defined as "any battering or beating inflicted on a person without his or her consent." *Id.* "Assault and Battery" is defined within the policy to include such acts as "the ejection or exclusion with force or violence or attempt thereof, of any person of the premises by the insured and his/her/its employees or agents." *Id.*

Depending upon the precision of the language used, such exclusions may bar coverage for negligence claims brought against an insured commercial host for alleged negligence related to an assault or battery committed against the plaintiff by an unrelated third party. *See* 7A J. Appleman, *Insurance Law and Practice* § 4492.01 (Supp.1998). The more complete and precise the form of the exclusion, the less likely the court is to find the provision ambiguous. *Id.* Therefore, in order to prevail on summary judgment, Capitol Indemnity must have clearly and distinctly communicated to Blazer the nature of any restrictions or limitations of coverage. *See National Union Fire Ins. v. Reno's Exec. Air,* 100 Nev. 360, 682 P.2d 1380, 1382 (1984). Moreover, the Court will construe any ambiguities in Blazer's favor. *See Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 606 P.2d 1095, 1098 (1980).

On occasion, courts have reviewed provisions similar to those in the present case. *See, e.g., Hermitage Ins. Co. v. Dahms,* 842 F.Supp. 319 (N.D.Ill.1994)[2]; *Berg v. Schultz,* 190 Wis.2d 170, 526 N.W.2d 781 (Ct.App.1994)[3]. The significant factor in

---

2. The *Hermitage* exclusion provided that "bodily injury or death alleged to have been caused by ASSULT [sic] AND/OR BATTERY shall not be deemed an accident or occur-

rence under the Policy and no coverage shall apply hereunder." 842 F.Supp. at 322.

3. The *Berg* policy provided, "This insurance does not apply to 'bodily injury' or 'property

determining that these provisions unambiguously excluded coverage for the negligence actions, filed against the commercial host as a result of personal injuries suffered at the hands of a third party, was that the insurance policy provisions excluded claims "arising out of" or "caused by" the assault and/or battery. *See Hermitage*, 842 F.Supp. at 325; *Berg*, 526 N.W.2d at 783.

■ In order for a claim or injury to "arise out of" an assault and battery, a causal connection must be established. *Compare Mt. Vernon Fire Ins. Co. v. Creative Hous., Ltd.*, 93 F.3d 63, 66 (2d Cir.1996) (requiring "but for" causation) *and Hermitage*, 842 F.Supp. at 324 (same) *with Ross v. City*, 408 N.W.2d 910, 912 (Minn.Ct.App.1987) (requiring only a general causal connection) *and Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993) (acknowledging that the "overwhelming weight of authority in jurisdictions that have interpreted ... assault and battery exclusions involving assault and battery committed by a third party" looks for a causal connection between the claims against the insured and the assault and battery).

The *Mt. Vernon* decision is particularly helpful in clarifying the scope of this "arising out of" terminology. In *Mt. Vernon*, the Second Circuit Court of Appeals reviewed a policy which excluded claims "based on" assault and battery. However, it certified two questions to the New York Court of Appeals in order to clarify the scope of "based on" and "arising out of" terminology in the realm of third-party assault and battery. *See Mt. Vernon*, 93 F.3d at 63–64. First, the New York Court of Appeals determined that "no significant difference exists between the phrases "based on" and "arising out of" and that neither phrase is ambiguous." *Id.* at 66. Second, it discussed whether assaults committed by the insured's employees should be discussed differently from assaults committed by unrelated persons. *Id.*

The New York Court of Appeals decided that "the crucial inquiry is not who perpetrated the assault, but rather whether the cause of action would not exist 'but for' assault." *Id.* As a result, the Second Circuit Court of Appeals reversed the district court's earlier determination that the exclusionary clause was ambiguous, concluding that "because [the insured] would be unable to maintain claims for [negligence] 'but for' the assault upon her, under New York law, her claims are 'based on' assault and battery and therefore excluded from coverage under the insurance policy." *Id.*

■ While the Nevada Supreme Court has not precisely addressed the clarity and scope of such "arising out of" terminology in the context of assault and battery exclusions, it has previously followed a policy of broad inclusive interpretation of such provisions. *See Hernandez v. First Fin. Ins. Co.*, 106 Nev. 900, 802 P.2d 1278, 1280 (1990) (finding no insurer duty to defend against negligent hiring claim where policy barred coverage of "any ... omission in connection with the prevention" of assault and battery). In light of this policy, this Court believes that the Nevada Supreme Court, if confronted with the question *sub judice*, would apply the same inclusive definitions crafted in the *Berg*, *Hermitage*, and *Mt. Vernon* decisions and bar coverage. Pursuant to this "but for approach, 'it is immaterial whether the assault was committed by the insured or an employee of the insured on the one hand, or by a third party on the other.' " *Id.* (quoting *Mt. Vernon Fire Ins. Co. v. Creative Hous., Ltd.*, 88 N.Y.2d 347, 645 N.Y.S.2d 433, 668 N.E.2d 404, 407 (1996)). Instead, the Court must take a broader perspective and look to the resulting injuries which give rise to the cause of action against the insured. *See Mt. Vernon*, 93 F.3d at 66. Here, none of Shaw's claims could have arisen absent the commission of the tortious assault and battery and the resulting physical injuries. Hence, any absence of references to third

damage' or 'personal injury' arising out of

Assault and/or Battery." 526 N.W.2d at 782.

parties will not, as Blazer contends, render the Assault and Battery Exclusion ambiguous. *See Mt. Vernon,* 645 N.Y.S.2d 433, 668 N.E.2d at 406.

Our conclusion, denying coverage to Blazer under the insurance policy, is consistent with the manner in which other courts have handled this particular policy exclusion. *See Eady v. Capitol Indem. Corp.,* 232 Ga.App. 711, 502 S.E.2d 514, 516 (1998) (applying the "but for" analysis and denying coverage); *Capitol Indem. Corp. v. Callis,* 963 S.W.2d 247, 250 (Mo. Ct.App.1998) (finding the plaintiffs' claims to be premised on the assault and battery and denying coverage); *Capitol Indem. Corp. v. L. Carter Post,* 225 Ga.App. 354, 484 S.E.2d 52, 54 (1997) (barring coverage where bodily injury arose out of an assault and battery); *Gilmore v. Westerman,* No. 95–1142, 1996 WL 73972, at *2 (Wis.Ct. App. Feb.22, 1996) (finding *Berg* dispositive and denying coverage); *Cooper v. Capitol Indem. Corp.,* No. 95–1433, 1995 WL 635190, at *3 (Wis.Ct.App. Oct.31, 1995) (same). Blazer has failed to provide any persuasive case law to contradict these findings. Blazer's citation of the district court decision in *Mt. Vernon* is especially ill-founded given that decision's reversal on appeal. *See Mt. Vernon Fire Ins. Co. v. Creative Hous.,* 797 F.Supp. 176 (E.D.N.Y.1992), *rev'd,* 93 F.3d 63 (2d Cir. 1996). Therefore, the Assault and Battery Exclusion applies and Capitol Indemnity has no duty to defend or indemnify Blazer with respect to any of the claims in the underlying action as a matter of law.

### 2. Liquor Liability Exclusion

While the Assault and Battery Exclusion alone will preclude coverage as to all of Shaw's claims against Blazer, the liquor liability provisions of the policy would also bar coverage of many of those same claims. The Liquor Liability Exclusion prohibits coverage for " 'bodily injury' ... for which any insured may be held liable

by reason of [c]ausing or contributing to the intoxication of any person ... or [a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." (Pl.'s Mot. For Summ.J., Ex. D at C0066.) Although neither side contests the clarity or prominence of this exclusion, many courts have found similarly worded exclusions to be unambiguous. *See Cormier v. Travelers Ins. Co.,* 618 So.2d 1185, 1186 (La.Ct.App.1993); *Safeco Ins. Co. v. Shawnee Mechanical Contractors, Inc.,* 209 Ga.App. 165, 433 S.E.2d 66, 67 (1993); *Sprangers v. Greatway Ins. Co.,* 175 Wis.2d 60, 498 N.W.2d 858, 863 (1993); *see Fraternal Order of Eagles v. General Acc. Ins. Co.,* 58 Wash.App. 243, 792 P.2d 178, 181 (1990). Capitol Indemnity and Blazer do, however, dispute the applicability of these provisions to Shaw's third and fourth claims for relief.

■ The Nevada Supreme Court has never discussed the applicability or scope of a liquor liability exclusion. However, most other courts in determining the scope of liquor liability exclusions have made the distinction between (a) allegations arising directly out of or dependent upon the sale of alcohol, the service of alcoholic beverages, or the causing of a person's intoxication, and (b) allegations based in more general theories of negligence which could arise in contexts completely unrelated to alcohol.[4] *See Interstate Fire & Casualty Co., Inc. v. 1218 Wisconsin, Inc.,* 136 F.3d 830, 835 (D.C.Cir.1998); *J.A.J., Inc. v. Aetna Casualty and Sur. Co.,* 529 A.2d 806, 808 (Me.1987); *Boudreaux v. Siarc, Inc.,* 714 So.2d 49, 52 (La.Ct.App.1998); *Paradigm Ins. Co. v. Texas Richmond Corp.,* 942 S.W.2d 645, 651 (Tex.App.1997, writ denied); *Kovesdy v. Utica Fire Ins. Co.,* 119 Ohio App.3d 547, 695 N.E.2d 1165, 1168 (1997); *Hartford Acc. and Indem. Co. v. Taylor,* 240 S.E.2d 575, 576 (1977).

A comparison of the *Paradigm* and *J.A.J.* cases illustrates this distinction.

---

4. Therefore, Capitol Indemnity is incorrect in its belief that one excluded allegation under the Liquor Liability Exclusion results in all claims being excluded, because the Court must look at each claim individually. *See Paradigm,* 942 S.W.2d at 651.

Both cases included allegations that the insured negligently allowed the patron to leave the bar in an intoxicated state. However, in *Paradigm*, the court barred the plaintiff's claims from coverage under the policy's liquor liability exclusion because they "arose out of" the business of serving alcohol or were linked to causing the tortfeasor's intoxication. *See Paradigm*, 942 S.W.2d at 651. In contrast, the *J.A.J.* court did not bar the plaintiff's claims because they were "unaffected by alcohol consumption" and could have been based in theories arising out of the insured's knowledge that the patrons were developing an antagonistic relationship likely to result in violence. *See J.A.J.*, 529 A.2d at 808.

The important factor which reconciles the different results is the nexus between the allegations and the consumption of alcohol. For example, in *Paradigm*, the intoxicated patron caused an automobile accident and injured a third party who then sued the bar for failing to prevent the intoxicated patron from leaving the bar and driving in an intoxicated state. 942 S.W.2d at 647–48. The theory behind the plaintiff's claims against the bar necessarily depended upon the patron's intoxicated state; therefore, the claim was logically barred from coverage under the plain language of the exclusion. In contrast, the intoxicated patron in *J.A.J.* left the bar, whereupon he was assaulted. 529 A.2d at 807. The plaintiff's claims against the bar did not depend upon the patron's intoxicated state because they could have been based on the theory that the bar negligently allowed the patron to leave the bar, despite knowing of the antagonistic attitudes of the parties waiting for him outside the premises. *Id.* at 808. In essence, one claim could only be brought upon an establishment serving or selling alcohol and the other could be brought against any establishment on general negligence grounds. *See, e.g., Kovesdy*, 695 N.E.2d at 1168 (concluding that negligent entrustment of car keys to an intoxicated patron is a separate and distinct claim because "[a]nyone can give car keys to an intoxicated person without ever selling or even serving any alcohol to him.").

This Court is confident that Nevada would adopt the same analysis in light of the vast majority of cases which have adopted and/or followed this precedent. Therefore, in applying these principles to the present case, the allegations within the third and fourth claims for relief which have a direct nexus to the sale or service of alcohol or the causing or contributing to any person's intoxication are barred by the Liquor Liability Exclusion. In contrast, those allegations which could arise in non-alcohol related contexts will survive.

In his third claim for relief, Shaw alleges that Petruccio (1) caused excessive amounts of alcohol to be served upon Banach and Simpson; (2) knew or should have known that her conduct constituted a likelihood of assault and battery by Banach and Simpson upon Shaw; and, (3) failed to take reasonable steps to prevent the assault and battery by continuing to serve alcohol. (Shaw's Compl. ¶¶ 27–29.) The fourth claim for relief imputes Petruccio's conduct to her employer, Blazer. (Shaw's Compl. ¶¶ 35, 36.) Because these claims are premised on Petruccio serving alcohol to Banach and Simpson, thereby contributing to their intoxication, the Liquor Liability Exclusion clearly bars coverage for these allegations. In as much as these claims are imputed to Blazer in the fourth claim for relief, coverage is also excluded as to him.

On the other hand, Shaw also pleads certain acts of negligence within the third claim for relief, which Blazer has labeled "simple negligence," that fall outside the scope of the Liquor Liability Exclusion because they are not premised on Petruccio's contributing to Banach's and Simpson's intoxication or the business of selling or serving alcohol. These allegations of simple negligence include Petruccio's failure to warn, failure to intercede, and failure to promptly request police assistance when it became likely that the assault and battery would occur. (Shaw's

Compl. ¶¶ 29(2), 30.) The viability of these allegations does not depend upon Blazer's selling or service of alcohol, nor do these claims necessarily arise out of the causing or contributing to any person's intoxication. Like the situation in *J.A.J.*, it is not unreasonable to imagine these claims arising in any number of non-alcohol related contexts where the insured becomes aware of developing antagonism between two patrons. Therefore, coverage is not barred as to these claims of "simple negligence" under the Liquor Liability Exclusion.

Less clear is whether the Liquor Liability Exclusion applies to Shaw's allegations that Petruccio knew or should have known that the assault and battery was likely to occur, whereby he failed to take appropriate steps to protect the safety of a business invitee. (Shaw's Compl. ¶ 30.) Shaw could be alluding to Petruccio's serving of alcoholic beverages to Banach and Simpson as an inappropriate step; on the other hand, Shaw could be referring to the allegations of mere negligence including the failure to warn, failure to intercede, and failure to promptly contact the police. To the extent this allegation is premised on Petruccio causing or contributing to Banach and Simpson's intoxication, the Liquor Liability Exclusion performs to exclude coverage for this allegation. Conversely, the Liquor Liability Exclusion does not preclude coverage with respect to this allegation insofar as Shaw is alluding to general acts of negligence.

In summary, the Liquor Liability Exclusion bars coverage for those claims which have a close nexus to the sale or service of liquor and/or the causing or contributing to the intoxication of any person. The Court must emphasize, however, that even those claims which are not excluded under the Liquor Liability Exclusion are nonetheless barred from coverage by the Assault and Battery Exclusion.[5]

## D. Reimbursement of Expenses

■ Capitol Indemnity also requests reimbursement of all expenses incurred in the investigation and defense of Shaw's Claims against Blazer, Petruccio, and the Lounge. The disputed issue is whether Capitol Indemnity is required to reserve its rights before it can pursue reimbursement.

The right to reimbursement does not arise unless there is an understanding between the parties that the insured would be required to reimburse the insurer for monies expended in providing a defense. *See St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*, 804 F.2d 520, 522 (9th Cir.1986) (applying California law and denying reimbursement because there was no understanding between the parties that the insured would reimburse the insurer); *see also Forum Ins. Co. v. County of Nye, Nev.*, No. 91–16724, 1994 WL 241384, at *3 (9th Cir. June 3, 1994) (applying Nevada law and allowing reimbursement because there was sufficient evidence of an "understanding" that the insurer would be reimbursed for the defense costs). The insured must have "unambiguous notice that it may later be held responsible for costs incurred." *Id.* at *3.

Accordingly, Capitol Indemnity may be reimbursed for costs incurred in defending Blazer against claims not potentially covered under the insurance policy only if there was a clear understanding between the parties that Capitol Indemnity reserved the right to reimbursement for the costs of the investigation and/or defense. *See St. Paul Mercury Ins. Co.*, 804 F.2d at 522. Capitol Indemnity has presented no evidence to indicate the existence of any such understanding.[6] Absent such evi-

---

5. Although the parties also dispute the applicability of the Expected or Intended Injury Exclusion, the Court finds it unnecessary to explore the matter, given the completely preclusive effects of the Assault and Battery Exclusion and, to a lesser extent, those of the Liquor Liability Exclusion.

6. Contrary to Capitol Indemnity's belief, *Buss v. Superior Ct.*, does require the insurer to reserve its right to reimbursement. *See* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, 784 n. 27 (1997)..

dence, Capitol Indemnity's request must be denied.

## V. Conclusion

The assault and battery of Shaw could be an "occurrence" under the insurance policy. However, Capitol Indemnity has no duty to defend or indemnify Blazer, Petruccio, or the Lounge as to Shaw's claims because coverage is completely precluded by the Assault and Battery Exclusion and, to a lesser extent, the Liquor Liability Exclusion. Furthermore, Capitol Indemnity is not entitled to reimbursement of expenses incurred because it has not presented any evidence of a reservation of the right to reimbursement.

IT IS THEREFORE ORDERED that Capitol Indemnity's Motion for Summary Judgment (# 8) is GRANTED in part and DENIED in part.

The Motion is GRANTED with respect to Capitol Indemnity's request for declaratory relief finding that it has no duty to defend or indemnify Blazer against any of Shaw's claims.

The Motion is DENIED with respect to Capitol Indemnity's request for reimbursement of expenses.